Madden, Judge,
delivered the opinion of the court:
In May 1943, the plaintiff made a contract to manufacture 100,000 pairs of khaki trousers for the Army, out of cloth to be furnished by the Army. In June of the same year, the plaintiff made a similar contract to manufacture 230,000 wool flannel shirts. Since the Army was to furnish the cloth for these garments, and since the cloth was valuable and was hard for civilians to get, the contracts stipulated the amount of cloth which the plaintiff would be furnished, and provided that if the plaintiff required more cloth to complete its contracts, the Army would supply the cloth but the plaintiff would have to pay for it, at one or the other of two rates of prices. The lower price would prevail if the plaintiff accounted for all the cloth it received, either by manufacturing it into garments or by returning it, even though it had been cut into small and unusable pieces. If all the Government’s cloth was thus returned, it would be certain that the plaintiff had not called for more cloth than used, and diverted some of it to its private use in its civilian trade. If, however, the plaintiff did not return all the cloth it had received, it was to pay a much higher price for the extra cloth which it called for in addition to that furnished without charge by the Government.
The plaintiff manufactured the trousers and shirts called for by the contracts. Of the trousers tendered by the plaintiff *905 to the Army, 1,731 pairs were rejected by the Army because of defects. It then became necessary for the plaintiff to call for more cloth from which to make 1,731 pairs of acceptable trousers to replace the rejected ones. On the shirt contract, 1,243 were rejected, and were replaced by shirts manufactured from additional cloth. But the plaintiff, because it returned, either in the form of completed and accepted garments, or of rejected garments, or of scrap, all the cloth it had received, was charged only the lower price for the additional cloth which it had called for and received. There was deducted from moneys otherwise due the plaintiff $2,819.09 for the extra khaki cloth, and $8,343.53 for the extra wool flannel cloth.
The plaintiff says that the reason it made so many defective garments, and hence had to buy additional cloth and do additional work to replace them was because the Government furnished it defective cloth. It says that the Government impliedly warranted that it would furnish normally usable cloth, and we think that is true. It is not to be expected that a silk purse can be made out of a sow’s ear. But the evidence does not persuade us that the cloth furnished the plaintiff was below the standard of what would have been expected. Finding 6 shows the source of the cloth. Shipments were made to the plaintiff and to other contractors from the supply on hand in the Fort Worth Quartermaster Depot. The cloth furnished the plaintiff was not all supplied in one lot, but was taken, from time to time, from the Depot as the plaintiff needed it. The plaintiff could not, then, have been the victim of a supply of defective cloth which was sent to it and not to other contractors. It got, on the average, the same kind of cloth that the other contractors had. Most of the other contractors had no difficulty in completing their contracts out of the initial allowance of cloth.
It is hard to tell what was the cause of the plaintiff’s trouble. Finding 17 shows that it had performed prior comparable contracts without exceeding its allowances of cloth. But the plaintiff’s letter of February 16, 1945, suggests that its difficulties with the instant contracts resulted from labor troubles.
*906 The plaintiff claims that, since the Government received and kept the 1,731 pairs of rejected trousers and the 1,243 rejected shirts referred to above, it had no right to charge the plaintiff for the extra cloth required to make the replacements for these garments. The plaintiff says that that application of the contract provision converts it into a penalty provision, and makes it illegal. In an ordinary contract to manufacture to order and sell, if the seller tendered defective articles which the purchaser rejected and required to be replaced with good articles, the seller would be out the cost of the material and labor needed to make the replacements, but he would still have the defective articles,' for whatever they were worth. But the contracts here involved provided differently. The garments were to be made from the Government’s cloth, and because of the scarcity of cloth and the danger of its being diverted to civilian uses, the contract expressly required the contractor to return all the cloth received, in the form of acceptable garments, rejected garments,[1] scraps or otherwise, or to pay a high price for extra cloth if all the cloth was not so returned. Because the plaintiff did return all the cloth, including that which was in the rejected garments, it escaped the alternative higher price. The contract provision seems to us to have been well written to further a legitimate purpose, and to have been enforceable.
The plaintiff’s petition will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.