**HAGGAR COMPANY**
v.
**The UNITED STATES.**
No. 176–54.

United States Court of Claims.
Feb. 8, 1955.

---

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Kathryn H. Baldwin, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge, delivered the opinion of the court:

The plaintiff in its petition says that in 1943 it made two contracts with the Government, one for the manufacture of 100,000 pairs of cotton khaki trousers at 71 cents a pair, the other for the manufacture of 230,000 flannel shirts at 68 cents apiece. The contracts provided that the Government would furnish the cloth for the garments; that all irreparable rejects would be shipped by the plaintiff to the Government; that in the event that public necessity required that garments not conforming to the specifications be used, the plaintiff would be paid for them at a proper reduction in price; that the Government would allow a specified amount of cloth for the manufacture of the garments and if the plaintiff used more cloth than the amount specified, the plaintiff would have to pay for the excess.

The plaintiff manufactured 99,327 pairs of trousers and 229,570 shirts that were accepted, and 1,731 pairs of trousers and 1,243 shirts which did not conform to specifications and which, the Government at the time represented to the plaintiff, were irreparable rejects and would not be used by the Government except as scrap.

The Government charged the plaintiff $2,818.09 for 4,239 yards of cotton cloth in excess of the allowance, and $8,343.53 for 3,610 yards of flannel cloth in excess of the allowance.

The plaintiff asserts on information and belief that the Government's representation that the defective trousers and shirts would be used only as scrap was a misrepresentation, and that the fact, which was concealed from the plaintiff, was that the defective garments were used by the Government because public necessity required it; that the misrepresentation and concealment amounted to fraud.

The plaintiff says that those defective garments that could be used without repair were classified by the Government to be paid for at 90 percent of the contract price; those that needed minor repairs to be paid for at 50 percent; and only those which could not economically be made usable were to be scrapped.

The plaintiff says it should recover the above-stated percentages of the prices of the garments that were classified as usable, and should recover that proportion of the amount which it was charged for excess cloth which corresponds with the amount of the alleged excess cloth which was in fact used to make usable garments. The plaintiff requested the contracting officer to make findings as to the use which was made of the defective garments, and appealed to the head of the department from the

contracting officer's refusal to make such findings. The appeal was denied. The plaintiff calls upon the Government to produce evidence as to the classifications assigned to the defective garments.

The plaintiff's petition scrupulously avoids any mention of any former litigation between the parties about these contracts. The Government, in its answer and its motion for summary judgment, remedies that omission and reminds us that in the case of Haggar Company v. United States, 121 Ct.Cl. 891, announced on March 4, 1952, we considered many of the same facts concerning the same contracts, and rendered judgment against the plaintiff. The Government pleads that the matter is *res adjudicata* and moves for a summary judgment on that ground.

The plaintiff urges that its present suit is upon a cause of action different from the former one. It says that in the former suit it claimed the full price of the rejected garments upon the ground that the Government had furnished such defective cloth that it was impossible to make garments which complied with specifications. Upon the same ground it demanded the refund of the full amount which it had been charged for excess materials. As we have seen above, the *gravamen* of its present claim is different.

The Government says that the change in the plaintiff's theory of right and liability does not make a new cause of action of the present suit; that the former suit, being for the full contract price of the defective garments, and for the refund of all the money charged the plaintiff for excess cloth, included the plaintiff's more restricted claims for percentages and proportions of these same items. The Government points out that in our finding 20 in the former case, 121 Ct.Cl. at page 903, we quote a letter from the plaintiff to the Army's Board of Contract Appeals in which it said:

"* * * We cannot but feel that this refusal to give us credit for the 1,731 pairs of made up khaki trousers, principally mill flaws is a penalty, for certainly the Depot did not discard them as scrap. The same applies to the 1,243 wool flannel shirts."

In the same finding we referred to another letter from the plaintiff to the Secretary of War which asserted that the rejected garments were ultimately used by the Government and that the plaintiff was entitled to be paid for them.

The Government points to our finding 21 in the former case, 121 Ct.Cl. at page 904, which said, in part:

"The rejected trousers and shirts which were received by defendant from plaintiff were retained by the Government and have since lost their identity. There is no evidence as to what use, if any, the Government made of such rejected garments. * * *"

In the former case the court, at the plaintiff's request, issued a call upon the Department of the Army for a certain document. The Army, in response to the call, produced the document and a number of inter-office communications relating to the plaintiff's claim. One of these writings said:

"Since the irreparable rejects retained by the Government have lost identity as Haggar Company garments, it is impossible at this date to state the disposition made of them."

The plaintiff, in an affidavit appended to its opposition to the defendant's motion for summary judgment, states that this response to our call was false and fraudulent; that the maker of the affidavit has, since the date of our former judgment, learned that the rejected garments here in question were not scrapped, but were classified as garments which, under a statement of policy made by proper authorities of the Army, were to be paid for at 90 percent or at 50 percent of the contract price; that the Fort Worth Quartermaster De-

pot has precise and exact records which will prove the above assertions.

If the statements in the affidavit are true this statement in the Army's response to our call was misleading and, as shown by our finding 21 in the former case, it did mislead the court.

Subdivision (b) of our Rule 54, 28 U.S.C.A. authorizes the court to relieve a party from final judgment on the grounds of (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence, and (3) intrinsic or extrinsic fraud, misrepresentation, or other misconduct of an adverse party, provided the motion to set aside the judgment is made within one year after the judgment. The rule also authorizes the court to set aside a judgment for "any other reason justifying relief from the operation of the judgment", and sets no time limit on the filing of a motion requesting that relief.

The rule also contains a general provision which authorizes the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

In considering Rule 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A. with which our Rule 54(b) is substantially identical, the Supreme Court, in Klapprott v. United States, 335 U.S. 601, at page 614, 69 S.Ct. 384, at page 390, 93 L.Ed. 266 said:

"Thus we come to the question whether petitioner's undenied allegations show facts 'justifying relief from the operation of the judgment.' It is contended that the 'other reason' clause should be interpreted so as to deny relief except under circumstances sufficient to have authorized relief under the common law writs of *coram nobis* and *audita querela,* and that the facts shown here would not have justified relief under these common law proceedings. One thing wrong with this contention is that few courts ever have agreed as to what circumstances would justify relief under these old remedies. To accept this contention would therefore introduce needless confusion in the administration of 60(b) and would also circumscribe it within needless and uncertain boundaries. Furthermore 60(b) strongly indicates on its face that courts no longer are to be hemmed in by the uncertain boundaries of these and other common law remedial tools. In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

■ If a plaintiff practices a fraud in the prosecution or proof of his case in our court, he forfeits his claim, no matter how meritorious his claim may otherwise have been, or how supererogatory may have been his attempted fraud. We cannot tolerate being misled into unjust judgments by answers to our calls which give us false impressions as to material facts. We assume that the writer of the communication in question had no intention to mislead his associates, and we are sure that his superiors, in responding to our call, had no intention to mislead the court. But, if the plaintiff's present contentions are valid, the communication was, in its effect, a false representation to the plaintiff and to the court.

■ We think that the most economical procedure, in the circumstances, is for us to treat the plaintiff's present suit as an independent action to be relieved of the former adverse judgment. Under the Federal Rules of Civil Procedure, the courts have been liberal in treating pleadings as what they should have been, rather than what they were called by the pleader. See In re Cremidas' Estate, D.C., 14 F.R.D. 15; Hadden v. Rumsey Products, Inc., 2 Cir., 196 F.2d 92.

Defendant's motion for summary judgment is denied. The case will be referred to a commissioner of this court for the taking of evidence relevant to the issues as we have defined them.

JONES, Chief Judge and LARAMORE, WHITAKER and LITTLETON, Judges, concur.