**Forrest L. CARNEY et al.**

v.

**The UNITED STATES.**

No. 529–71.

United States Court of Claims.
July 14, 1972.

Forrest L. Carney, Eunice M. St. John and James H. Morrison, pro se.

Joseph J. Leahy, Land and Natural Resources Division, Dept. of Justice, and Thomas L. McKevitt, Dept. of Justice, Washington, D. C., with whom was Asst. Atty. Gen. Kent Frizzell, for defendant.

Before COWEN, Chief Judge, LARAMORE and DURFEE, Senior Judges, and DAVIS, SKELTON, NICHOLS and KUNZIG, Judges.

## OPINION

PER CURIAM:

This *pro se* petition is brought under 28 U.S.C. § 1491 and F.R.C.P. Rule 60(b). Plaintiffs allege they were owners of mining claims, that defendant built a dam and flooded their property, and thereafter filed a declaration of taking with a suit to condemn the property, brought in the United States District Court, District of Utah. Because of fraud on the court and misconduct of plaintiffs' then attorney, plaintiffs were awarded only $20,000 though they then claimed their property was worth $16,000,000, and now demand as just compensation $56,100,000, with interest at six percent. Trial took place before a jury, in 1966. It appears that after the jury made its award, plaintiffs here (except Morrison, who came into the case later as an assignee) had their falling out with their counsel, one Oman, who filed a motion to establish an attorney's lien against the $20,000 awarded. The plaintiffs responded *pro se* with a letter to the trial judge, filed in the case, and making against Mr. Oman many of the same accusations made in the petition herein. It concludes with a prayer that the court under Rule 60(b) grant a new trial. New counsel thereafter appeared for our plaintiffs in lieu of Oman and presumably he treated the above refer-

enced *pro se* letter as a nullity. He submitted new computations as to what Oman should receive, and the court's final judgment included an express direction to the clerk to pay Oman $10,068.88 out of the award. There was evidently no appeal.

■ Defendant originally moved to dismiss, relying on *res judicata* and collateral estoppel. On authority of Advertising Checking Bureau, Inc. v. United States, 159 F.Supp. 330, 141 Ct.Cl. 430 (1958), there can be no doubt these are good grounds absent plaintiffs' invocation of F.R.C.P. Rule 60(b). Defendant originally disposed of this by advising us that the F.R.C.P. do not apply to cases in this court. However, we noted that F.R.C.P. 60(b) and our Rule 152(b) are virtually identical, and we thought a reference to the first by a *pro se* plaintiff here should be taken to mean the second. We concluded that plaintiffs intended to bring an "independent action" under Rule 152(b) "to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." Being, however, doubtful whether this was adequate authority to enable us to relieve a party from a judgment of a United States District Court, we entered an order directing the parties to furnish supplemental briefs on the question, and this they have diligently done. We conclude we lack jurisdiction to entertain such an "independent action."

Our rules must be read in light of the principle that:

> * * * the court cannot, through its acknowledged rule-making power, expand its jurisdiction beyond the limits prescribed by Congress. * * * Rolls Royce Ltd. v. United States, 364 F.2d 415, 419, 176 Ct.Cl. 694, 701 (1966).

In that case we cited Graf v. United States, 24 F.Supp. 54, 87 Ct.Cl. 495 (1938). This is a rule of construction that governs the application of all our rules. The quoted language of Rule 152(b) has its proper scope for application in cases where plaintiff seeks in this court relief against an earlier decision of this court. Thus in Haggar Co. v. United States (Nos. 48790 and 48791) 121 Ct.Cl. 891 (1952, erroneously 1942 in report), we adjudicated the claims there involved for defendant, but in Haggar Co. v. United States, 128 F. Supp. 404, 130 Ct.Cl. 770 (1955), we held that a new suit on the same contracts was not barred by collateral estoppel because we would treat it as an "independent action" under our then Rule 54(b), now 152(b). An order reported, 136 Ct.Cl. 805 (1956), reflects that the new suit was settled for $7,000. *Cf.,* Kamen Soap Products Co. v. United States, 140 Ct.Cl. 566 (1957), cert. denied, 357 U.S. 939, 78 S.Ct. 1385, 2 L. Ed.2d 1551, reh. denied, 358 U.S. 858, 79 S.Ct. 16, 3 L.Ed.2d 93 (1958), in which we refused in an "independent action" to reopen Kamen Soap Products Co. v. United States, 124 F.Supp. 608, 129 Ct. Cl. 619 (1954), because no new matter was alleged. Defendant explains these cases, correctly we think, as giving relief of an "ancillary variety," citing Judge Friendly in Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 800 fn. 1 (2d Cir., 1960), that is, ancillary to the original suit and not requiring independent grounds of jurisdiction.

■ When the prior judgment attacked in the "independent action" is that of a different court, the new court must be one having "independent and substantive equity jurisdiction" because the action is equitable in nature. 7 Moore's Federal Practice, § 60.36, quoted and followed in Bankers Mortgage Co. v. United States, 423 F.2d 73, 78–79 (5th Cir.), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). *See* also, Winfield Associates, Inc. v. Stonecipher, 429 F.2d 1087, 1090 (10th Cir. 1970); Locklin v. Switzer Bros., Inc., 335 F.2d 331 (7th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 652, 13 L. Ed.2d 557, reh. denied, 380 U.S. 926, 85 S.Ct. 883, 13 L.Ed.2d 814 (1965), among many that defendant cites. These decisions interpret and apply F.R.C.P. 60(b)

but their bearing upon our practically identical Rule 152(b) is obvious, particularly since, with respect to "independent actions," both rules speak in terms of preserving a previously existing type of relief, not creating a new one.

We may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and enforcing it as reformed in an action at law. Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498 (1967). But our general jurisdiction under the Tucker Act, 28 U.S.C. § 1491, does not include an action for "specific equitable relief" such as an action for an "accounting." Klamath & Modoc Tribes v. United States, 174 Ct.Cl. 483, 488 (1966). United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), interprets and applies this general rule in cases where we had thought our jurisdiction was broader because of a statute. *See* also Quinault Allottee Ass'n v. United States, 453 F.2d 1272, 1274, 197 Ct.Cl. 134 (1972), for a restatement of our position since the *King* case. There does not seem to be any possible doubt that an "independent action" under Rules 60(b) or 152(b) when against a judgment of a different court, is more in the nature of "specific equitable relief" and not in the permissible class of actions that *Chernick* illustrates, that is, it is not incidental to our general jurisdiction. It represents one of the farthest reaches of equity jurisprudence, coming down from the old days when the distinction between law and equity was emphasized by their being the province of different courts. *Cf.* Lord Portarlington v. Soulby, 3 Mylne & Keen 104 (Chancery 1834).

So far as the suit would relitigate the condemnation in the Utah District it is barred by collateral estoppel and *res judicata* unless we can grant relief as plaintiff would have us do, under Rule 152(b), and we cannot do that without stepping outside our jurisdiction, granting "specific equitable relief."

In our order of November 24th, 1971, we also sought to be advised as to the possible transfer of this case to the Utah District Court, under 28 U.S.C. § 1506. Neither party will have any part of this, and it now appears, what we did not know on the date of the order, that plaintiffs Carney and St. John sued in the District Court, for the District of Utah, on June 1, 1970, joining the trial judge with the United States as defendant. The relief sought was essentially the same as here, i. e., to relitigate the original condemnation in an "independent action." Plaintiffs specifically referred to F.R.C.P. 60(b). The defendant, United States, moved to dismiss the complaint for want of jurisdiction and another judge, than the one sued, granted the motion on October 22nd, 1971. The papers furnished us do not show the grounds of want of jurisdiction asserted, but defendant here says that the District Court for the District of Utah would not have jurisdiction of the case, should we transfer it, for the reason that the amount sued for, $56,100,000, exceeds the maximum jurisdictional amount of $10,000 which applies to Tucker Act cases, in District Courts, 28 U.S.C. § 1346. 28 U.S.C. § 1506 provides that a suit may be transferred to a court where it could have been brought there originally at the time filed here. Since that court has held it has no jurisdiction, that ends the matter. We think it appropriate to add that nothing in this opinion is intended or should be construed to delimit the authority of a United States District Court to modify or vacate its own judgments under F.R. C.P. 60(b), or any other authority.

Defendant would undertake to show that the preconditions for an "independent action" do not exist. It discusses and would rely on defenses, including laches, if we took jurisdiction. Since we do not, it is unnecessary to consider them.

We reserved the right in our November 24th, 1971, order to decide the case without oral argument. Plaintiffs' mo-

tion for summary judgment is denied. Defendant's motion for summary judgment is allowed. The petition is dismissed.

DAVIS, Judge (concurring in the result):

My difficulty with the court's opinion is that I am far from sure that we are without *statutory* jurisdiction in this case since the plaintiffs are simply seeking a monetary judgment for a "taking" (a claim over which we clearly have normal cognizance), and they ask us to set aside the Utah judgment simply as one step toward obtaining the money judgment they desire for this "taking". They do not seek a declaration setting aside the prior judgment as an end in itself, but merely as an intermediate step on the way to a money judgment on a claim within our ordinary jurisdiction. In this respect, there does seem an analogy in the reformation and rescission cases in which we set aside or reform a contract on the way toward granting a money judgment which is otherwise within our statutory authority. As we said recently in Quinault Allottee Ass'n v. United States, 453 F.2d 1272, 1274, 197 Ct.Cl. 134 (Jan. 1972):

> Defendant repeats the ancient but inaccurate shibboleth that this court has no "equity jurisdiction", and then argues that since the class suit was originally a creature of equity we cannot use it. The correct premise is, not that we are without equity jurisdiction, but that we cannot grant non-monetary equitable relief such as an injunction (United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889)), a declaratory judgment (United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), or specific performance. Where the relief is monetary, we can call upon such equitable concepts as rescission and reformation to help us reach the right result. United States v. Milliken Imprinting Co., 202 U.S. 168, 173–174, 26 S.Ct. 572, 50 L.Ed. 980 (1906), confirming on this point, 40 Ct.Cl. 81, 98–99 (1904). If procedural techniques which are the children of equity were forbidden to this court, we could not utilize such common and useful practices as intervention, depositions and discovery, all of which have become integral to our practice.

Perhaps the rescission and reformation cases are fundamentally different, but I am not prepared to say so definitively.

I concur in the result because I interpret that part of our Rule 152(b) which says, "This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court", as not applying to this kind of case but only to a truly "independent action" challenging one of our own orders, judgments or proceedings. This reading seems to me called for by our past practice (cited by the court) as well as by the serious doubt (discussed in the court's opinion) as to our statutory jurisdiction to entertain an "independent action" to set aside the judgment of another court. The result, in my view, is that plaintiffs are barred at the threshold by the prior Utah judgment, and cannot avail themselves, in this court, of the charge of fraud since, as I see it, Rule 152(b) applies only to a truly "independent action" to set aside a judgment of our own. This is not such an "independent action"; there is no "independent" action at all, and the suit does not involve a judgment of this court.

DURFEE, Senior Judge, joins in the foregoing opinion concurring in the result.