**Lloyd W. GOLDER, III and Vicki Cox Golder, Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

v.

**GENERAL ELECTRIC CREDIT CORPORATION OF TENNESSEE and Federal Insurance Company, Third Party Defendants.**

No. 525-83C.

United States Claims Court.

Sept. 19, 1988.

Donald C. Hastings, Troy, N.Y., for plaintiffs.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

Edward T. Lynch, Jr., New Britain, Conn., for third party defendants.

## OPINION

FUTEY, Judge.

This action arises from a seizure of a Cessna Aircraft by the United States Drug Enforcement Agency pursuant to the Controlled Substance Act, 21 U.S.C. § 881. The aircraft was subsequently released to the primary lienholder, General Electric Credit Corporation of Tennessee, which successfully petitioned the United States Department of Justice for remission and mitigation. Thereafter, a jury found against forfeiture in a government instituted action against the aircraft. Plaintiffs in this action claim that the seizure and release of the aircraft, in which they had a property interest, constitutes a violation of their rights under the Fifth Amendment. This case is presently before the court on defendant's motion for summary judgment. For the reasons discussed herein the defendant's motion is granted and the plaintiffs' complaint is dismissed.

### Factual Background

On November 9, 1977, agents of the United States Department of Justice Drug Enforcement Administration (DEA) seized a 1976 Cessna TCM, Golden Eagle II Aircraft for an alleged violation of the Controlled Substance Act. 21 U.S.C. § 881 [1]

---

**1.** This statute provides in pertinent part as follows:

§ 881(a)—The following shall be subject to forfeiture to the United States and no proper-

The agents acted upon information gathered during an investigation which purportedly led them to believe that Donald Golder[2], the plaintiff's son, and other persons were utilizing the aircraft to facilitate the sale of marihuana.[3] Plaintiffs, Vicki Cox Golder and Lloyd W. Golder, III, d/b/a L & V Ranch Locators, Inc., the registered owners of the aircraft, were notified of the DEA action immediately. General Electric Credit Corporation of Tennessee (GECC–TN), the first encumbrance holder on the aircraft[4], was notified of the seizure on the following day. On November 21, 1977, plaintiffs became in default under the terms of the purchase money loan granted by GECC–TN on the aircraft and remained in default until a settlement was reached in this matter in the United States District Court for the District of Arizona. *General Electric Credit Corporation of Tennessee v. Lloyd W. Golder and Vicki Cox Golder,* No. CIV 79–099–TUC ACM (D.A.Z. Oct. 12, 1982).

The DEA sent written notice of the seizure of the aircraft to the plaintiffs and GECC–TN on November 25, 1977. That notice advised of the government's intention to commence a forfeiture action against the aircraft under 19 U.S.C. §§ 1610–12 and 21 C.F.R. § 1316.78, and the process for filing petitions for remission and mitigation under 19 U.S.C. § 1618 and 21 C.F.R. §§ 1316.79–1316.81. GECC–TN filed a petition for remission and mitigation of the aircraft with the United States Department of Justice on December 12, 1977. A petition for remission and mitigation was also filed by plaintiffs on December 21, 1977.

In addition, on November 25, 1977, the DEA requested that the United States Attorney for the Northern District of New York institute condemnation proceedings against the aircraft pursuant to 21 U.S.C. § 881. The United States Attorney henceforth filed a complaint for forfeiture in the district court, which was amended on January 9, 1978. *United States v. 1976 Cessna TCM Airplane,* No. 77–CV–526 (N.D.N.Y. March 27, 1982). Thereafter, a United States Marshall took possession of the aircraft pursuant to a warrant of seizure.

Plaintiffs filed an answer to the government's amended complaint for forfeiture on January 26, 1978, demanding the return of the aircraft and dismissal of the complaint for forfeiture. GECC–TN filed an answer to the government's complaint on January 30, 1978, which requested that the United States release the aircraft to GECC–TN in consideration of the terms of the security agreement between GECC–TN and the Golders.

On May 12, 1978, GECC–TN's petition for remission and mitigation was granted. The United States Department of Justice consented to release the aircraft to GECC–TN on condition that bond be posted in substitution for the aircraft and GECC–TN enter into an indemnity agreement with the United States.[5] The New York District

---

ty right shall exist in them: (4) All conveyances, including aircraft ... used ... to facilitate the transportation, sale ... of [controlled substances and related items].

§ 881(b)—Any property subject to forfeiture to the United States under this subchapter may be seized ... when—(4) [there is] probable cause to believe that the property has been used ... in violation of this subchapter.

2. Donald Golder was never charged by the United States for any crimes relating to the incidents that led to the seizure of the aircraft.

3. The government has submitted affidavits of Special Agents David J. Hoyt and Louis F. Bussler as well as a report filed on November 11, 1977, regarding the investigation and seizure of the Cessna.

4. Plaintiffs signed and executed a $200,000.00 promissory note to GECC–TN on July 31, 1977, which provided for ninety six equal consecutive monthly payments of $3,223.20 with interest at a rate of 11.75% per annum. Plaintiffs also signed and executed, on that date, a chattel mortgage on the aircraft which granted a first encumbrance purchase money security interest in the aircraft to GECC–TN as security on the promissory note.

5. Since the forfeiture action against the aircraft had not been finally determined, GECC–TN was required to substitute a bond for the aircraft in the amount of $228,000.00 pending a final outcome in that case. The Federal Insurance Company (FIC), acted as a surety on this bond, thus becoming a joint obligor. GECC–TN and FIC also entered into an agreement with the Department of Justice which provided that they would indemnify the United States in the amount of $228,000.00 against all claims for damages

Court approved the bond on March 16, 1979, and the aircraft was released to GECC–TN.

On April 29, 1979, while the government forfeiture action was pending in the district court, GECC–TN sold the aircraft for $230,000.00. After applying the proceeds of the sale to the plaintiffs' outstanding debt on the aircraft and related expenses, a deficiency remained in the amount of $28,-666.93. The Golders and GECC–TN agreed on a settlement whereby the plaintiffs would deposit $26,475.00 in escrow for the benefit of GECC–TN until final disposition of the forfeiture action. This settlement was approved by a "Stipulation and Order" in the United States District Court for the District of Arizona on January 30, 1981. *General Electric Credit Corporation of Tennessee v. Lloyd W. Golder III and Vicki Cox Golder,* No. CIV 79–099 TUC ACM (D.A.Z. Oct 12, 1981). The Arizona District Court subsequently approved an "Order Compelling Performance of Settlement Agreement" which confirmed the stipulated compromise, declaring its terms binding and enforceable upon the Golders and ordering the Golders to deposit the agreed sum of money into escrow.[6]

Trial proceedings in the New York District Court forfeiture action were commenced on March 15, 1982, and on March 27, 1982, a jury verdict was entered denying forfeiture. The United States Court of Appeals for the Second Circuit upheld this judgment in an unpublished opinion. *United States v. 1976 Cessna TCM Airplane,* 729 F.2d 1441 (2d Cir.1983). Consequently, plaintiffs filed a complaint in the same district court for damages arising from the seizure and release of the aircraft. *Lloyd*

*W. Golder III and Vicki Cox Golder, d/b/a L & V Ranch Locators, Inc. v. United States,* No. 82–CV–260, slip op. (N.D. N.Y. June 14, 1983). The district court, finding that it had no jurisdiction over plaintiff's claim against the government exceeding $10,000.00[7], and that the statute of limitations had run on plaintiffs' tort claim[8], dismissed the action. Plaintiffs then filed the present suit against the United States praying for monetary damages for an alleged violation of their rights under the Fifth Amendment. On January 31, 1984, the United States filed a motion in this court to notify FIC and GECC–TN to appear as third party defendants and assert their interest. Oral argument on the defendant's motion for summary judgment was heard on May 24, 1988.

### Discussion

Plaintiffs' amended complaint appears to allege a violation of both the Fifth Amendment takings and due process clauses.[9] Although plaintiffs do not directly argue that this court should grant relief based on the due process clause of the Fifth Amendment, due to the ambiguity of the complaint, this court feels compelled to address this issue.

The Claims Court's basic jurisdiction is set forth in the Tucker Act, as codified at 28 U.S.C. § 1491 (1982). Section 1491(a)(1) states in relevant portion:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any

---

raised by the Golders relating to the release of the aircraft to GECC–TN. The terms of the agreement provided that it would only remain in effect for six years after the release of the aircraft.

**6.** The record is void of evidence that this money has ever been placed in escrow. Counsel for GECC–TN responded to this court's inquiry as to the status of the escrow in a letter dated June 8, 1988, which states that his file "does not indicate that an escrow was ever created."

**7.** 28 U.S.C. § 1346(a)(2).

**8.** 28 U.S.C. §§ 1346(b) and 2671 et seq.

**9.** Paragraphs 21 and 21a of plaintiffs amended complaint state:

That the aforementioned Aircraft has ben (sic) illegally and improperly seized by the defendant in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution.

That the aforementioned Aircraft was taken for a public use without payment to plaintiffs of just compensation as required by the Fifth Amendment of the United States Constitution.

express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

■ The Tucker Act, however, "does not create substantive rights enforceable against the United States for money damages." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). A claim for damages must be based upon a violation of a source of law set forth in the Act which can fairly be interpreted as mandating the payment of compensation from the Federal Government. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967).

■ It is well established that the due process clause of the Fifth Amendment of the Constitution does not mandate the payment of money by the United States. *Alabama Hospital Association v. U.S.*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). *Cabrera v. United States*, 10 Cl.Ct. 219, 222 (1986); *Shaw v. United States*, 8 Cl.Ct. 796, 800 (1985). Hence, this court lacks jurisdiction to entertain a claim by plaintiff based upon a violation of the Fifth Amendment due process clause arising from the seizure and release of the aircraft.

■ Plaintiffs allege that the DEA lacked probable cause for the seizure, thus the government's confiscation and temporary possession of the aircraft resulted in a Fifth Amendment taking, entitling them to just compensation. Their complaint asserts that the issue of probable cause was "adjudicated adversely to the defendant" in the New York District Court forfeiture action, binding this court under the doctrines of collateral estoppel and res judicata. This, however, is not a correct statement of law.

The jury in the district court action was instructed that it could find against forfeiture of the aircraft if *either* (1) there was no probable cause for the initial seizure of the aircraft, *or* (2) probable cause for the seizure existed, however, the owners were uninvolved in and unaware of the aircraft's misuse, and had done all that could be reasonably expected to prevent such misuse. The court requested that the jury return a verdict either in favor of or against forfeiture. The court did not require that the jury state the findings upon which the verdict was based. The jury's verdict simply stated: "We have reached a decision in favor of the defendant, that the plane should be returned to Mr. and Mrs. Golder." *United States v. 1976 Cessna TCM Airplane*, No. 77–CV 526 (N.D.N.Y. March 27, 1982). This court has been presented with no evidence that the verdict resulted from the jury finding a lack of probable cause.

The doctrine of collateral estoppel bars the relitigation of issues essential to a judgment which have been actually and necessarily determined by a competent court when raised again in subsequent litigation involving the parties to the prior action. *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); *Intern. Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090–91 (Fed.Cir.1984); *Mother's Restaurants Incorporated v. Mama's Pizza Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). Contrary to plaintiffs' contention, as discussed, the issue of probable cause was not actually and necessarily determined by the district court, nor was it essential to the judgment. Accordingly, the doctrine of collateral estoppel is not applicable in this suit to the issue of probable cause.

■ Under the doctrine of res judicata a final judgment made by a competent court on a cause of action is a complete bar and is conclusive on that claim when raised in a subsequent suit in which the identity of the parties is the same. *Intern. Order of Job's Daughters*, 727 F.2d at 1091. This rule extends to bind parties on any causes of action which should have been raised in the prior suit in addition to those actually litigated. *Brown v. United States*, 3 Cl.Ct. 31, *aff'd* 741 F.2d 1374 (Fed.Cir.1984). In the present action plaintiffs claim a violation of their Fifth Amendment rights,

whereas, in the government instituted forfeiture action the only issue before the court was the propriety of the forfeiture. A claim for recovery under the Fifth Amendment takings clause could not have appropriately been raised in that action. Thus, the doctrine of res judicata is also inapplicable in the present action.

 Although there has been no determination as to the existence of probable cause for the seizure of the aircraft, this court can nevertheless decide plaintiffs' claim for compensation arising from the governmental seizure and release of the aircraft. If probable cause to seize the aircraft did not exist, the DEA action would not give rise to a Fifth Amendment taking claim. A taking within the meaning of the Fifth Amendment occurs when the rightful property, contract or regulatory powers of the government are employed to control rights or property which have not been purchased. *Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir.1986); *Armijo v. United States*, 229 Ct.Cl. 34, 37, 663 F.2d 90, 95 (1981); *Montego Bay Imports, Ltd. v. United States*, 10 Cl.Ct. 806, 809 (1986). No taking claim arises when rights or property have been impaired through unlawful government action. *Florida Rock Industries*, 791 F.2d at 898–99. A seizure without probable cause would not be a proper exercise of the government's regulatory power. Therefore, if the DEA did not have probable cause for the seizure, plaintiffs could not sustain a Fifth Amendment taking claim.

In the alternative, if probable cause did exist, the seizure and retention of the aircraft during the pendency of the forfeiture action would not constitute a compensable taking. The Federal Circuit has recently spoken on this issue in *United States v. One (1) 1979 Cadillac Coupe DeVille*, 833 F.2d 994 (Fed.Cir.1987). This court finds that case dispositive and controlling on plaintiffs claim.

In that case David Wayne Baker was arrested and charged with distribution of cocaine and conspiracy to distribute. Baker's car was seized pursuant to 21 U.S.C. § 881 for allegedly facilitating the drug violation. An *in rem* action was instituted in the United States District Court for the Eastern District of Kentucky seeking forfeiture of the vehicle. The district court found sufficient evidence to support a finding of probable cause for the seizure. The forfeiture issue was then tried to a jury, which returned a verdict in favor of Baker, determining that the vehicle "was not used to facilitate a drug transaction...."

In a subsequent hearing the district court ordered the government to return the vehicle to Baker and pay him money damages for the decrease in the value of the car from the time of seizure to the date of the court's ruling. The district court concluded that the facts in *United States v. One 1965 Chevrolet Impala Convertible*, 475 F.2d 882 (6th Cir.1973), were "apposite" to those before the court, and "pursuant" to that case the government's seizure and temporary possession of the car, which resulted in a decrease of its value, deprived Baker of a property right. Consequently, the court held that the government must either return the vehicle to Baker at its value determined at the time of the seizure or pay Baker the equivalent amount.

The Federal Circuit reversed, finding that neither 28 U.S.C. § 2465 nor the Fifth Amendment takings clause required payment for the decreased value of the vehicle. *One (1) 1979 Cadillac*, 833 F.2d at 998–1000. It held that the lower court improperly relied on *One 1965 Chevrolet* which provided no support for requiring the government to pay Baker the decreased value of the vehicle. The Federal Circuit distinguished *One 1965 Chevrolet* on the basis that the law in that case upon which the seizure was effectuated was later held unconstitutional. *One (1) 1979 Cadillac*, 833 F.2d at 999. In addition, the court stated that because *One 1965 Chevrolet* was decided before the holding in *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), that the Tucker Act "does not provide any substantive rights enforceable against the United States for money damages", to the extent that the "decision rested upon the contrary

view, its precedential value has been vitiated." *One (1) 1979 Cadillac*, 833 F.2d at 999. In the present case, plaintiffs reliance on *One 1965 Chevrolet* is similarly misplaced for the reasons set forth by the Federal Circuit.

■ In reaching its determination that the seizure and temporary possession of the vehicle was not a compensable taking, the Federal Circuit relied upon the ruling in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In that case the Supreme Court found that the forfeiture of a leased yacht used in connection with a narcotics violation did not constitute a compensable taking even though the owner was unaware of its illegal use. This conclusion was based on the court's three factor analysis for determining the types of actions which constitute takings. Specifically, the character of the governmental action, its economic impact, and its interference with reasonable investment expectations. The Federal Circuit held that "[t]he governmental interest that the seizure and temporary possession of Baker's vehicle served, is similar to and no less strong than the governmental interest upon which the court relied in *Calero–Toledo* in holding that the forfeiture of property of an innocent owner used in narcotics violations did not effect a taking of the owner's property." *One (1) 1979 Cadillac*, 833 F.2d at 1000. The court further stated that "the fact that the jury ultimately found that the vehicle had not been used to facilitate a narcotics transaction did not ... convert that seizure into a taking." *One (1) 1979 Cadillac*, 833 F.2d at 1000. Accordingly, the Federal Circuit held that Baker was not entitled to just compensation under the Fifth Amendment for losses resulting from the government's seizure and retention of the vehicle between the date of seizure and the date of release to the owner. Finding the same reasoning applicable in the present case, this court concludes that the government seizure and temporary possession of the aircraft did not amount to a Fifth Amendment taking.

■ Plaintiffs additionally allege that the aircraft was wrongfully released by the government to GECC–TN. However, it has been established in this case through requests for admission that the release of the aircraft was not wrongful.[10]

Furthermore, plaintiffs are bound by the New York District Court's approval of the release of the aircraft to GECC–TN, and the Arizona District Court's approval of the settlement agreement for the balance due on plaintiff's note for the purchase money loan, to which plaintiffs filed no objection. For this court to find that the aircraft was wrongfully released by the government would necessarily contradict the actions of these district courts. The Claims Court, as a federal trial court, has no jurisdiction to review the actions of other federal courts. 28 U.S.C. § 1491 (1982); *Carney v. United States*, 199 Ct.Cl. 160, 162, 462 F.2d 1142, 1144–45 (Fed.Cir.1972); *Bayshore Resources Co. v. United States*, 2 Cl.Ct. 625, 640 (1983). Therefore, this court cannot relieve plaintiffs of the New York and Arizona District Courts actions.

■ Moreover, plaintiffs claim for a wrongful release of the aircraft sounds in tort. This court's jurisdiction does not extend to claims in tort. 28 U.S.C. § 1491 (1982); *Aviation Contractors Inc. v. United States*, 207 Ct.Cl. 973, 974, 521 F.2d 1406, *appeal dismissed*, 521 F.2d 1406 (1975); *Montego Bay Imports Ltd. v. Unit-*

---

**10.** Third Party defendants GECC–TN and FIC filed a "Request for Admission" on August 3, 1984. Paragraph 11 of that document requests the plaintiffs admit that "[t]he release of the aircraft to General Electric Credit Corporation of Tennessee was not wrongful." This court's records do not contain a response from plaintiffs. Thus, under RUSCC 36 the matter is deemed admitted and is conclusively established. RUSCC 36 states in relevant portion as follows:

(a) A party may serve upon any other party a written request for the admission ... of the truth of any matters.... The matter is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter(.... (b) Any matter admitted under this rule is conclusively established.

*ed States,* 10 Cl.Ct. 806, 809 (1986). Accordingly, a claim for wrongful release cannot be asserted in this court.

Summary judgment is appropriate where no genuine issue of material fact exist and as a matter of law the moving party is entitled to judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Weide v. United States,* 4 Cl.Ct. 432, 435 *aff'd* 765 F.2d 157 (Fed.Cir.), *cert. denied* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 61 (1985); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). The evidence must be viewed in a light most favorable to the nonmovant in whose favor all reasonable inferences must be drawn. *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed. Cir.1985). This court finds no issues of material fact in dispute, and as a matter of law defendant's motion is ripe for summary judgment.

### Conclusion

For the reasons stated hereinabove, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to dismiss plaintiffs' complaint. No costs.

IT IS SO ORDERED.