The **ADVERTISING CHECKING BUREAU, Inc., an Illinois Corporation,**

v.

**UNITED STATES.**

No. 444-56.

United States Court of Claims.
March 5, 1958.

Horace A. Young, Chicago, Ill., for plaintiff.

Thomas L. McKevitt, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

Plaintiff, an Illinois corporation, sues for just compensation for the alleged taking of its property.

Plaintiff alleges in its petition that on February 10, 1950, it entered into a lease with Clark-Congress Corporation, an Illinois corporation, for a portion of the Rand-McNally Building in Chicago.

Plaintiff's lease with the Clark-Congress Corporation contained an eminent domain clause, as follows:

"14. Eminent Domain: If the whole or any part of the Building in which the premises are located, or the land on which the Building stands, shall be taken or condemned by any competent authority for any public use or purpose, the term of this lease shall end upon and not before the date when possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. Current rent shall be apportioned as of the date of such termination. If any condemnation proceeding shall be instituted in which it is sought to take or damage any part of the Building in which the premises are located or the land on which the Building stands, Lessor shall have the right to cancel this lease upon not less than 90 days' notice prior to the date of cancellation designated in the notice. No money or other consideration other than the consideration herein provided shall be payable by Lessor to Lessee for this right of cancellation, and Lessee shall have no right to share in the condemnation award."

On June 22, 1951, the United States entered into a written lease with the Clark-Congress Corporation, said lease covering the entire building. The lease commenced on January 1, 1952, and expired December 30, 1956.

Immediately after Clark-Congress Corporation entered into the above lease the Government notified this plaintiff that the Rand-McNally Building was needed for Government use and that arrangements had been made for its occupancy at the earliest practicable date.

Plaintiff then alleges that during the period from June 22, 1951, to and including December 31, 1951, the United States took charge of the building and disturbed the normal operation of the building by reason of various renovation operations carried on in the building in areas immediately adjacent to its offices. Plaintiff further alleges that the remodeling activities were far and beyond the usual and ordinary remodeling that customarily goes on in a building and that said activities interfered with plaintiff's use and occupancy of the space it had under lease, by creating noise, dust, confusion, uncertainty, and unrest among the employees of plaintiff, as well as disturbance of plaintiff's comfort and business.

As a result of the above remodeling plaintiff alleges that on November 10, 1951, its position as tenant became intolerable and on that day it determined that its rights as a tenant were being destroyed and that it was being constructively evicted by the United States, and it determined to move as soon as possible.

In implementation of that decision it immediately negotiated for and obtained office space in Columbus, Ohio, and removed a portion of its files to that city. Plaintiff further alleges that it stepped up its efforts to purchase the Williams Building in Chicago, as a result of its above outlined decision.

Plaintiff then alleges that the defendant filed a condemnation proceeding against plaintiff and two other tenants and recently amended its complaint seeking to take the fee simple title to the real estate in question as of June 22, 1951, the date of said lease. Plaintiff then says the foregoing allegations show a taking compensable under the Fifth Amendment and that it has suffered damages in the sum of $125,000.

The following facts are established from the exhibits and affidavits filed:

On December 12, 1951, the United States did file a condemnation proceeding to acquire the leasehold rights of The Advertising Checking Bureau, Inc., and two other tenants of the Rand-McNally Building. On the same date a declaration of taking by the United States was filed.

On December 13, 1951, the United States requested an order against plaintiff to deliver possession on January 1, 1952. This request was opposed by The Advertising Checking Bureau, Inc., who requested that no order of possession be entered prior to July 1, 1952. As a result thereof, the court, on December 26, 1951, deferred the Government's right to go into possession until May 31, 1952. At this stage of the proceedings plaintiff had made no claim that it had been actually or constructively evicted. Thereafter the present plaintiff filed an answer in the condemnation proceedings alleging that the United States had elected to take subject to its (The Advertising Checking Bureau, Inc.) existing lease. The present plaintiff also filed a cross action against the Clark-Congress Corporation seeking damages for the alleged breach of an implied covenant of quiet enjoyment of its lease with that corporation. On March 14, 1952, an order was entered by the District Court stating that The Advertising Checking Bureau, Inc., had complied with the order of December 26, 1951, and had surrendered said space to the United States.

On March 26, 1952, the United States moved for summary judgment, that The Advertising Checking Bureau, Inc., was entitled to no compensation because under the eminent domain clause in its lease with the Clark-Congress Corporation the taking or condemnation of the premises terminated the lease. On September 23, 1952, the Government's motion was sustained and judgment entered that The Advertising Checking Bureau, Inc., was entitled to no compensation. (At this point the present plaintiff had made no claim of a constructive eviction prior to the time the condemnation suit was filed.) The judgment of the District Court was later affirmed by the Court of Appeals for the Seventh Circuit. United States v. Advertising Checking Bureau, Inc., 204 F.2d 770.

Thereafter, The Advertising Checking Bureau, Inc., obtained a judgment on its cross claim against the Clark-Congress Corporation, which was reversed on appeal. United States v. Merchants Matrix Cut Syndicate, 7 Cir., 219 F.2d 90, 96.

On December 28, 1955, the United States amended the complaint in the condemnation suit, to acquire a leasehold interest from the Clark-Congress Corporation beginning as of the date possession was acquired and to acquire a fee interest in the property.

This case arises on a motion by the Government for judgment on the pleadings or for summary judgment, alleging (1) the petition fails to state a claim upon which relief can be granted, (2) the plaintiff's claim has been determined in prior litigation and is barred under principles of *res judicata* and estoppel, and (3) there is no genuine issue of fact and the defendant is entitled to judgment of dismissal as a matter of law.

In our view the question is: Was the present claim incorporated in the condemnation proceedings upon which summary judgment was granted, or could and should it have properly been made a part of that proceedings?

 The rule of *res judicata* as stated by the Supreme Court in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, is:

" * * * The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter

which was offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose.'* Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, 'Res Judicata,' 38 Yale L.J. 299; Restatement of the Law of Judgments, §§ 47, 48." [Italics supplied.]

Here obviously the question of a constructive taking prior to the formal acquisition could have been raised in the condemnation proceedings. The alleged events had already taken place and all relative facts were well known to plaintiff. The issue was not raised in the condemnation proceedings, but in our view this cause of action was, in any event, swallowed by the judgment in the condemnation proceedings. That is to say, the Court of Appeals for the Seventh Circuit held that where a lease contained a clause for automatic termination on taking of property for public use by Government authority, the tenant had thereby contracted away the rights it might otherwise have had to compensation upon taking of the use of the property, and the tenant had no right which persisted beyond the taking. United States v. Advertising Checking Bureau, Inc., supra.

Here plaintiff complains of the Government's actions and alleges that the United States *constructively took their property.* This would have been a proper matter for the District Court in determining whether or not The Advertising Checking Bureau, Inc., was entitled to compensation for the loss of its leasehold interest. Anderson v. United States, 5 Cir., 179 F.2d 281. See also United States v. Merchants Matrix Cut Syndicate, supra, for a discussion of the rules applicable to condemnation proceedings.

Therefore, in the light of the above, had plaintiff asserted the present claim in the condemnation action, the result would have been the same and plaintiff could not have recovered because its leasehold rights upon a taking of the property by the United States has been contracted away.

 Therefore, for the reasons stated in the foregoing conclusion, plaintiff's claim is barred by the doctrine of *res judicata.*

Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.