**(1) Jake KLEIN, (2) Julian Garrett, and Loyat Bland Garrett, husband and wife**

v.

**The UNITED STATES.**

**Julian GARRETT, and Loyat Bland Garrett, husband and wife, Neill Garrett and Pearl Garrett, husband and wife, and Earl Wagner, Third-Party Plaintiff,**

v.

**The UNITED STATES.**

**Nos. 60–66, 66–66.**

United States Court of Claims.
April 14, 1967.

Bert A. Bandstra, Knoxville, Iowa, for plaintiffs.

Hugh W. Lundy, Albia, Iowa, attorney of record for plaintiff Jake Klein.

Julian Garrett, attorney of record for plaintiffs Julian Garrett and Loyat Bland Garrett, Neill Garrett and Pearl Garrett.

Howard O. Sigmond, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTIONS AND PLAINTIFFS' CROSS-MOTIONS FOR SUMMARY JUDGMENT

PER CURIAM.*

These cases arise out of proceedings instituted by the United States in the United States District Court for the Southern District of Iowa to condemn land in Marion County, Iowa, for flood control purposes. The cases are before the court on cross-motions for summary judgment and have been ordered consolidated under Rule 47(a).

The Garretts, who were owners of two parcels of land in Marion County, Iowa, entered into two 5-year gravel contracts, one in January 1962 with Earl Wagner [1] and the other in October 1962 with Jake Klein, pursuant to which Wagner was granted the right to stockpile and remove gravel from one parcel, and Klein was granted the right to stockpile and remove gravel from the other parcel, upon payment to the Garretts of 10 cents per cubic yard.

After the execution of each of the gravel contracts, the Government in 1962 instituted a condemnation proceeding with the result that the fee simple titles to several tracts of land, including the two above-mentioned parcels owned by

---

* This opinion incorporates with minor changes the opinion prepared by Commissioner Richard Arens at the direction of the court, under Rule 54(b), with additions required by subsequent events.

[1]. Pursuant to a motion of the Garretts, Earl Wagner was made a plaintiff in case No. 66–66.

the Garretts, were taken, subject to then existing easements, and moneys were deposited with the district court as esti-mated just compensation. No mention was made of the gravel contracts or of the gravel rights in any of the documents filed in any of the proceedings, but all plaintiffs in the instant cases were served with notice of the proceedings. Thereafter, upon application of the Garretts, the district court issued orders under which there was disbursed to the Garretts approximately $130,000 which was part of the moneys deposited as estimated just compensation without prejudice to their right to have the sum of just compensation adjudicated.

In February 1966, the petitions in the instant cases were filed in this court, in which plaintiffs seek amounts which they claim as just compensation under the Fifth Amendment for the "taking" by defendant of the use and benefits of the gravel contracts. The parties agree that the fee simple titles taken by defendant included the gravel deposits which are real property and part of the land; but plaintiffs contend that the gravel contracts are personal property and are not included in the condemnation cases; and hence that plaintiffs are entitled to make claim in this court for losses sustained because of the "taking" of the contracts. Defendant's position is in substance that plaintiffs' only remedy is in the district court in which the condemnation cases are pending, and that frustration of the gravel contracts is a consequential damage which is not compensable.

In April 1966, a condemnation commission, appointed by order of the district court, conducted a trial on the issue of just compensation for the taking of the parcel from which Earl Wagner had the contract rights to stockpile and remove gravel. At the trial the testimony of Julian Garrett, Earl Wagner and other witnesses, adduced by both parties, was received. The commission found and reported to the court that the just compensation for the taking of the title in fee was $121,800 of which $5,000 was to be apportioned to Earl Wagner for the loss of his gravel contracts, and $116,800 was to be apportioned to the Garretts as the former property owners. In valuing the parcel, the commission allowed $16,000 as an additional increment for the underlying sand and gravel. The district court confirmed the commission's award on October 19, 1966, in an opinion which specifically dealt in some detail with the enhancement in value flowing from the sand and gravel, and with the value of the sand and gravel lease. That court has also confirmed (on December 13, 1966) the commission's award on the parcel from which Jake Klein had the right to stockpile and remove gravel. The award for that tract was $117,345 plus an enhancement for sand and gravel of $6,000, a total of $123,345; $1,000 was assigned to Klein's lease.

It is not, of course, the province of this court to review these reports of the commissions or to review the rulings of the district court in the condemnation cases; but it is sufficient for the purpose of ruling on the motions for summary judgment which are before this court to announce the conclusion which the decided cases compel, namely, that on the basis of the pleadings, the motions and the exhibits which accompany the motions, plaintiffs do not have a cause of action in this court.

As stated above, both parties agree that the fee simple titles taken by defendant included the gravel deposits which are real property and part of the land. Hence, the compensation for such deposits as part of the land is for the determination of the district court. A. W. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216 (1924); Travis v. United States, 287 F.2d 916, 152 Ct.Cl. 739 (1961), cert. denied, 368 U.S. 824, 82 S.Ct. 42, 7 L.Ed.2d 28; Brooks v. Shepard, 157 F.Supp. 379 (S.D.Ala., 1957); United States v. 158.76 Acres of Land, 298 F.2d 559 (2d Cir. 1962); United States v. Sunset Cemetery Co., 132 F.2d 163 (7th Cir. 1943).

We come then to the legal implications of the alleged "taking" of the gravel contracts as distinct from the gravel de-

posits. A leading case which lays down the guidelines that must be followed in the instant case is Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), in which the Government requisitioned the entire production of a steel company and directed that company not to comply with an outstanding contract for the sale of steel plate to a customer. The customer brought an action in this court to recover losses which it sustained as the result of its inability to perform the contract. The Supreme Court, in affirming the judgment of this court denying recovery, stated at pp. 510–511, 43 S.Ct. at p. 438:

* * * If, under any power, a contract or other property is *taken* for public use, the government is liable; but if injured or destroyed by lawful action, without a taking, the government is not liable. What was here requisitioned was the future product of the steel company, and, since this product in the absence of governmental interference would have been delivered in fulfillment of the contract, the contention seems to be that the contract was so far identified with it that the taking of the former, *ipso facto*, took the latter. This, however, is to confound the contract with its subject-matter. The essence of every executory contract is the obligation which the law imposes upon the parties to perform it. "It [the contract] may be defined to be a transaction between two or more persons, in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other." Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 629, 654, 4 L.Ed. 629. Plainly here there was no acquisition of the obligation or the right to enforce it. If the steel company had failed to comply with the requisition, what would have been the remedy? Not enforcement of the contract, but enforcement of the statute. If the government had failed to pay for what it got, what would have been the right of the steel company? Not to the price fixed by the contract, but to the just compensation guaranteed by the Constitution.

In exercising the power to requisition, the government dealt only with the steel company, which company thereupon became liable to deliver its product to the government, by virtue of the statute and in response to the order. As a result of this lawful governmental action the performance of the contract was rendered impossible. It was not appropriated, but ended.

Parties and a subject-matter are necessary to the existence of a contract, but neither constitutes any part of it; the contract consists in the agreement and obligation to perform. If one makes a contract for the personal services of another, or for the sale and delivery of property, the government, by drafting one of the parties into the army, or by requisitioning the subject-matter, does not thereby take the contract.

Two years later the Supreme Court was again confronted with a claim similar to that which was made in the *Omnia Commercial* case. In Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L. Ed. 644 (1925), the Government acquired by eminent domain land which was used in the business of growing and canning corn of a special grade and quality. The court held that while the special value of the land due to its adaptability for use in a particular business is an element which the owner of the land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as a just compensation upon a taking by eminent domain, there could be no recovery for consequential damages for loss to plaintiff's business or for its destruction. The court further held that if the business was destroyed, the destruction was an unintended incident of the taking of the land and that absent a statute allowing recovery therefor, there could be no allowance of an amount as just compensation under the Fifth Amendment.

*Mitchell,* supra, was recently cited and followed by this court in R. J. Widen Co. v. United States, 357 F.2d 988, 174 Ct. Cl. 1020 (1966), in which the plaintiff therein claimed just compensation under the Fifth Amendment for injuries to its personal property and business as the result of loss of water because of a flood control project. The court concluded that while the Government's acts constituted a taking of the plaintiff's real estate and water rights, there was no taking in the constitutional sense of the plaintiff's personal property and business and that the damages thereto, all of which were occasioned by the termination of the plaintiff's water supply, were incidental to or the consequences of the Government's taking of the real estate and water rights, and as such are not compensable. The court stated at p. 993 of 357 F.2d, at pp. 1028 and 1029 of 174 Ct.Cl.:

> * * * Undoubtedly, the United States could here have "taken" plaintiff's personal property and business, in which case just compensation would be due. But this was not done. The only taking in the present case was of the plaintiff's real estate and water rights, for which compensation has been fully paid * * *: The additional losses claimed in this proceeding are in the nature of consequential damages, that is to say, they were "an unintended incident" of the actual taking. * * *

It is settled law that in the absence of specific statutory mandate, compensation under the Fifth Amendment may be recovered only for property taken and not for incidental or consequential losses, the rationale being that the sovereign need only pay for what it actually takes rather than for all that the owner has lost. [citing cases] Hence the incidental spoilation of the plaintiff's inventory and equipment, the reduction or loss of its good will and profits, and the expenses incurred in having to re-adjust its manufacturing operations are non-compensable under long-established legal principles.

 We conclude that, to the extent the gravel contracts gave an interest in the land, that interest has been paid for in the condemnation suits but that, to the extent these contracts were personal property, they were not taken by the United States at all but simply frustrated as in the cases cited. In connection with the plaintiff's argument that the contracts were personal property under Iowa law, it is worth noting that federal law determines what constitutes real property for the purposes of federal eminent domain. State of Nebraska v. United States, 164 F.2d 866, 867–868 (8th Cir. 1947), cert. denied, 334 U.S. 815, 68 S.Ct. 1070, 92 L.Ed. 1745 (1948). In any event, plaintiffs have no cause of action in this court. See Dicker, et al. v. United States, Ct.Cl. No. 250–66, decided by order of the court entered March 10, 1967.

Defendant's motions for summary judgment are granted, plaintiffs' cross-motions for summary judgment are denied, and plaintiffs' petitions are dismissed.