**M.E. ROWLAND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 602–83C.**

United States Claims Court.

May 31, 1985.

---

Thomas J. Daly, Kansas City, Mo., for plaintiff. Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., of counsel.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

### Statement

The complaint in this case alleges that for several years prior to December 31, 1978, plaintiff owned and operated a sand and gravel dredging business on leased land adjoining the Sac River in St. Clair County, Missouri.

Situated on such leasehold were the following items of equipment and machinery with the in-place fair market value of each item claimed therefor by plaintiff as of December 31, 1978:

| | | |
|---|---|---|
| 1. | Dredging Barge | $7,200.00 |
| 2. | Steel structures on barge | 650.00 |
| 3. | Cutter Head | 5,400.00 |
| 4. | Sand and gravel pump | 3,660.00 |
| 5. | Diesel engine | 5,640.00 |
| 6. | Priming pump | 310.00 |
| 7. | Fuel Tank | 170.00 |
| 8. | Winches | 750.00 |
| 9. | Discharge structure | 930.00 |
| 10. | Sand hopper | 1,750.00 |
| 11. | Sand auger | 2,900.00 |
| 12. | Shaker screen | 5,400.00 |
| 13. | Miscellaneous equipment | 3,160.00 |
| | Total | $37,920.00 |

On or about August 18, 1978, the United States filed a condemnation proceeding in the United States District Court for the Western District of Missouri to acquire the land for the Harry S. Truman Dam and Reservoir project, and contemporaneously therewith filed a declaration of taking. In such proceeding, the United States named the landowner, as well as the lessee, M.E. Rowland, the plaintiff herein, as defendants.

In the condemnation proceeding, the district court ruled that Mr. Rowland was entitled to a share of the compensation for the taking of his leasehold interest and that he was entitled to present relevant evidence with regard to the value of such real estate and to show that the value of the

real estate was, in fact, enhanced by reason of his dredging equipment. However, at trial Mr. Rowland failed to call any witnesses to testify as to the fair market value of his leasehold interest with or without its enhancement by the dredging equipment. As a result, the district court accepted as true the testimony of the landowner's appraisers that the leasehold interest, with or without the enhancement, had no fair market value on the date of taking, and it so ruled. In such proceeding Mr. Rowland also filed a separate "Motion and Counter-Complaint" for the value of the dredging equipment, which he put at its replacement cost new of $132,300. However, the district court dismissed such pleading for lack of jurisdiction, on the ground that dredging equipment was most nearly akin to trade fixtures and that trade fixtures were personalty and not a part of the real property which was the subject of the condemnation proceedings. *United States v. 698.80 Acres of Land, More or less, Situated in St. Clair County, State of Missouri*, No. 78–0617–CV–W–1, Memorandum and Order (W.D.Mo. July 8, 1981).

The complaint herein concedes that the United States Corps of Engineers allowed complainant $879 for expenses incident to searching for another location, pursuant to Title 42 U.S.C. § 4622(a)(3), plus a relocation payment (hypothetical moving expenses) of $7,608, pursuant to 42 U.S.C. § 4622(a)(2) (although in fact plaintiff abandoned the equipment at the site). However, plaintiff deems such payments insufficient to compensate him for the in-place market value of the above listed items of dredging equipment and now sues to recover the difference.

In his complaint, plaintiff alleges that his property was taken without payment of just compensation because his dredging equipment has been rendered useless and valueless to him and to others, in that—

(a) Complainant could not move his dredging equipment, any reasonable distance, to be used at another location, because there were no other sites suitable for

a sand and gravel operation within 150 miles of plaintiff's former location;

(b) In the construction of the Truman Reservoir, the Corps of Engineers has flooded as new lakes the channels of the fast flowing rivers that were tributaries to the Osage River and has, therefore, necessarily destroyed all sites suitable for the production of sand and gravel from the streams and rivers, and thereby rendered his equipment useless;

(c) Payment of moving costs in lieu of payment for direct loss of tangible personal property deprives plaintiff of the in-place fair market value of his equipment;

(d) As a direct result of the government's activities in construction, filling and maintaining Truman Lake, plaintiff can no longer engage in a sand and gravel operation, and his former dredging equipment has been rendered useless to him and to others who might have been interested in purchasing it; and

(e) Such loss of use renders the aforesaid dredging equipment valueless.

In its brief, the government contends that plaintiff's dredging equipment was personal property, that it was not taken by the government and that it was not rendered valueless but was removable and salable at a substantial fair value. In support of its contentions, defendant has accompanied its motion for summary judgment by two affidavits. In the first, Mr. Marshall Carson states that he sold both the dredging business and the equipment at issue to the plaintiff in 1974; that he himself bought the equipment used, from persons at other Missouri dredging sites; and that he moved such equipment from its prior location to the Sac River site. It is his opinion that the dredging equipment he sold to Mr. Rowland could similarly have been readily moved to another site, and that there is a market for used dredging equipment. In the second affidavit, Mr. Lewis Vandeventer states that he purchased the dredging equipment at issue from the government 5 years after plaintiff abandoned it; that he removed this equipment from the Sac River property during

December 1983 and January 1984; that he sold the dredging barge to a third-party in Kansas City, Missouri, and hauled it for him to a site near Osceola, Missouri, and he sold the two sand augers for scrap; that he is currently using the diesel engine to power his sawmill; and that he is storing the rest of the dredging equipment to use in his own excavating and grading business.

In his brief, plaintiff concedes that the dredging equipment was personal property and that it could be moved to another location without substantial damage to it; and plaintiff's failure to counter defendant's affidavits with affidavits of his own also warrants the conclusion that the equipment did have continuing usefulness and a fair market value.[1]

### Discussion

Analysis of the plaintiff's claim reflects three possible theories for recovery: (1) That the government took plaintiff's dredging equipment without just compensation when it took the leasehold; (2) that the plaintiff's compensation for the taking of his leasehold should include reimbursement for the resulting loss in value of his equipment in-place; and (3) that the government took plaintiff's dredging equipment by embarking on a dam building program for all fast moving rivers within a 150-mile radius of plaintiff's location, which eliminated all feasible sites for a sand and gravel dredging operation and thereby deprived plaintiff of substantially all the economic value of its dredging equipment. These claims are discussed hereinafter *seriatim.*

### I

■ Plaintiff concedes that the dredging equipment was personal property which he could have removed from the leasehold

property at the time the government condemned the land, without permanent damage to the equipment. Accordingly, since the government did not physically seize nor deprive plaintiff of such equipment, it must be concluded that the government is not liable to pay plaintiff just compensation therefor on the theory of a direct taking.

This is in accord with the decision in *Lemmons v. United States,* 204 Ct.Cl. 404, 496 F.2d 864 (1974), involving closely analogous facts, wherein the court held that the government was not liable to the lessee of riverbank property taken by the government, for the value of a tipple affixed to the land and used in the lessee's sand and gravel dredging business, because the tipple was personalty, which was capable of being removed, and reassembled at another site, even though the owner chose to abandon it. And *see also United States v. 1,132 Acres of Land, etc., Allegheny,* 441 F.2d 356, 360 (2d Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971).

### II

The second theory of plaintiff's case, that the just compensation to which he was entitled for the taking of his leasehold should include reimbursement for his loss of the difference in value between the dredging equipment in-place and as salvage, might conceivably have provided a basis for recovery in the condemnation proceeding in the district court, but cannot provide a foundation for recovery herein.

In *Almota Farmers Elevator & Whse. Co. v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973), the Supreme Court held that where the government condemns a leasehold interest, the lessee's measure of damages for the taking of the realty may include the lessee's loss of his

---

**1.** When a motion for summary judgment is made and supported by affidavits, the non-moving party may not rest upon mere allegations or denials to show that a genuine issue of material fact exists for trial. *Pacific Far East Line v. United States,* 206 Ct.Cl. 378, 384–86, 513 F.2d 1355, 1358–59 (1975); *Royal Indemnity Co. v. United States,* 178 Ct.Cl. 46, 51–52, 371 F.2d 462, 465, *cert. denied,* 389 U.S. 833, 88 S.Ct. 33, 19

L.Ed.2d 93 (1967); *Radio City Music Hall v. United States,* 135 F.2d 715, 718 (2d Cir.1943); *Mount v. United States,* 2 Cl.Ct. 717, 720 (1983). Absent a showing by counter-affidavits, summary judgment may properly be granted against the non-moving party. *First Nat. Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Joplin v. Bias,* 631 F.2d 1235 (5th Cir.1980).

continued ability to use the improvements on the property over the term of the lease and any expected renewal thereof. This is so because for just compensation " 'The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.' * * * To determine such monetary equivalence, * * the owner is entitled to the fair market value of his property at the time of the taking. * * * And this value is normally to be ascertained from 'what a willing buyer would pay in cash to a willing seller.' " *Id.* at 473–74, 93 S.Ct. at 794. Had there been no condemnation the lessee would have continued to use the improvements, and if he had sold the leasehold, it is likely that the price "would have reflected the continued ability of the buyer to use the improvements over their useful life." *Id.* at 475, 93 S.Ct. at 795. And—

> "Because these fixtures diminish in value upon removal, a measure of damages less than their fair market value for use in place would constitute a substantial taking without just compensation. '[I]t is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty.' "

*Id.* And *see also Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); *United States v. General Motors Corp.,* 323 U.S. 373, 382–83, 65 S.Ct. 357, 361, 89 L.Ed. 311 (1945); and *United States v. Petty Motor Co.,* 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946).

Nichols On Eminent Domain, vol. 4, § 13.121[2] at 13–68 (3d rev. ed. 1981), puts the rule thusly:

> Where trade fixtures are involved—even though the tenant is in possession under a tenancy at will—he is entitled to the difference in value between the trade fixtures in place and their value as severed.

█ The difficulty with the plaintiff's position is, however, that the just compensation to which plaintiff was entitled for the taking of its leasehold, including its en-hancement attributable to having the equipment in-place on the real property, was previously determined by the district court in the condemnation proceeding. The court there advised plaintiff that he was entitled to present any evidence at the trial which he wished to present in regard to the value of the real estate, including "any relevant evidence in regard to whether the value of the real estate was, in fact, enhanced by reason of defendant Rowland's dredging equipment." The district court's determination was unfavorable to plaintiff in that it found no separate value for the leasehold. If plaintiff believed that the district court's determination did not fairly reflect the value of having his equipment in-place thereon, his remedy was to appeal that decision. He is barred from relitigating the same issue herein by the law of *res judicata* and collateral estoppel. *Rodes v. United States,* 225 Ct.Cl. 672 (1980); *Carney v. United States,* 199 Ct.Cl. 160, 462 F.2d 1142 (1972); *Advertising Checking Bureau, Inc. v. United States,* 141 Ct.Cl. 430, 159 F.Supp. 330 (1958).

### III

█ Plaintiff's third theory, that the government's dam building program on all fast moving rivers within a 150 mile radius of plaintiff's leasehold deprived plaintiff of all economic use and value of its dredging equipment, even if proven, would likewise be insufficient as a matter of law to constitute a compensable taking of the equipment. For that would be consequential damages, which are not compensable under the Fifth Amendment. *Jaffe v. United States,* 220 Ct.Cl. 666, 668, 618 F.2d 122 (1979); *Hartwig v. United States,* 202 Ct.Cl. 801, 809, 485 F.2d 615, 619–20 (1973); *Klein v. United States,* 179 Ct.Cl. 910, 915, 375 F.2d 825, 829 (1967), *cert. denied,* 389 U.S. 1037, 88 S.Ct. 770, 19 L.Ed.2d 824 (1968).

The consequential damage rule and its applicability herein are well illustrated by the decision in *Mitchell v. United States,* 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925). There the government acquired

from plaintiffs by eminent domain, for military use, a tract of agricultural land and paid the plaintiffs for the value of the land and improvements. However, because the particular land and other land in the vicinity likewise acquired by the government were uniquely adapted to growing the especially high quality of corn which plaintiff required in its corn growing and canning business, the plaintiffs were unable to reestablish themselves elsewhere in their business. Accordingly, they brought suit for additional just compensation for the loss of their business, resulting from the taking of their land and the other land in the vicinity. The Supreme Court ruled, however, that the loss of the former landowners' business, due to the unavailability of another site because of the government having taken all suitable land in the vicinity, was consequential damage not recoverable under the Fifth Amendment, explaining in part (*Mitchell,* 267 U.S. at 345, 45 S.Ct. at 294):

> Doubtless, such special value of the plaintiffs' land was duly considered by the President in fixing the amount to be paid therefor. The settled rules of law, however, precluded his considering in that determination consequential damages for losses to their business, or for its destruction. * * * No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the Government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land. There can be no recovery under the Tucker Act if the intention to take is lacking.

In *Omnia Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), the government had requisitioned the entire production of a steel manufacturer, rendering impossible the manufacturer's performance of a contract wherein the plaintiff had the right to purchase from the steel company a large quantity of steel plate at a price under market. Although the court conceded that the contract was property of great value to plaintiff, it nevertheless held

that its loss was not compensable under the Fifth Amendment because "That provision has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power", and "Frustration and appropriation are essentially different things." *Id.* at 510, 513, 43 S.Ct. at 438, 439.

In *Jaffe v. United States,* 220 Ct.Cl. 666, 668–69, 618 F.2d 122 (1979), the Court of Claims stated:

> The fact that lawful Government action injures or even destroys property or a business does not convert that action into a constitutional taking. "Frustration and appropriation are essentially different things." * * * Consequential damages may be very real indeed, but not compensable under the Constitution. * * * Not every deprivation of use, possession, or control of property is a taking. There must be an intent to take, and the actions of the Government on which a taking claim is premised must be authorized either expressly or by implication, by some valid act of Congress.

In *Jaffe* the court held that the bondholders of a toll bridge were not entitled to compensation for the loss they had incurred on their bonds, even if the government, by diverting traffic through the construction of a nearby parallel toll-free bridge, had caused the bond default.

In *R.J. Widen Co. v. United States,* 174 Ct.Cl. 1020, 357 F.2d 988 (1966), as part of a flood control project, the government entered upon plaintiff's property and damaged its real estate and diverted its water supply, which further damaged its business. When the plaintiff sought compensation for the loss of its land and water supply and in addition for its personal property and business, resulting from the termination of the water supply, the court concluded that there was no Fifth Amendment taking of the personal property and business; they were merely incidental to or the consequence of the government's taking of the real estate and water rights, and, as such, their loss was not independently

compensable. The court stated (*id.* at 1028–29, 357 F.2d at 993–94):

> Undoubtedly, the United States could here have "taken" plaintiff's personal property and business, in which case just compensation would be due. But this was not done. The only taking in the present case was of the plaintiff's real estate and water rights, for which compensation has been fully paid * * *: The additional losses claimed in this proceeding are in the nature of consequential damages, that is to say, they were "an unintended incident" of the actual taking. * * *
>
> It is settled law that in the absence of specific statutory mandate, compensation under the Fifth Amendment may be recovered only for property taken and not for incidental or consequential losses, the rationale being that the sovereign need only pay for what it actually takes rather than for all that the owner has lost. * * Hence the incidental spoilation of the plaintiff's inventory and equipment, the reduction or loss of its good will and profits, and the expenses incurred in having to readjust its manufacturing operations are non-compensable under long-established legal principles. [Citations omitted.]

And *see also Klein,* 179 Ct.Cl. at 916, 375 F.2d at 829.

For the same reasons as discussed in the cited cases, plaintiff's loss due to his alleged inability to use the dredging equipment at any other dredging site within 150 miles of its former location because of the government's damming of all fast moving rivers in the area must be deemed merely consequential. The government undoubtedly had the right to build dams at such locations as it deemed proper, and there was no direct taking of the dredging equipment merely because plaintiff could not use it at such locations.

This case is very similar to that of *Mitchell,* wherein it was claimed that plaintiff was entitled to compensation for loss of his business in addition to loss of his land because the government had taken other land in the vicinity which was uniquely suited for the growth of plaintiff's corn. If the inability of plaintiffs in *Mitchell* to pursue their business at other locations taken by the government was no more than consequential damage, then the inability of plaintiff here to use his dredging equipment at other locations taken by the government is similarly merely consequential damage.

Plaintiff relies most heavily upon the decision in *Pete v. United States,* 209 Ct.Cl. 270, 531 F.2d 1018 (1976). There, the plaintiffs owned land along the shore of a large lake on which they had constructed three large floating cabin barges, which they used to transport, house and feed hunting and fishing parties. Under authority of the Wilderness Act, 16 U.S.C. § 1131 *et seq.* (1964), the United States in cooperation with Canada established a 4 million acre wilderness area in Northeast Minnesota and Canada, part of which it renamed the Boundary Waters Canoe Area (BWCA). Pursuant to that authority, the government condemned plaintiffs' land and also promulgated regulations banning from the BWCA all commercial enterprises such as plaintiffs operated, and specifically prohibiting plaintiffs' floating motor power cabin barges. Plaintiffs were unsuccessful in the condemnation proceedings in attempting to obtain compensation for the barges because they were deemed personal property and not the subject of the condemnation. Accordingly, when they brought an inverse condemnation suit in the Court of Claims, the court awarded damages to plaintiff for the value of the barges because it was physically, technically, and economically unable to disassembly the barges and transport them out of the BWCA and reassemble them elsewhere for further use.

What distinguishes the *Pete* case from the instant one are the facts that the barges could not reasonably be transported elsewhere for less than their value, whereas the dredging equipment here could be so transported; and the loss of all value of the immobilized barges was the direct result of a Department of Agriculture regulation

banning the use of the barges in the BWCA and of another regulation which even forbade the transportation of the barges over National Forest land, whereas here plaintiff's alleged inability to realize the full value of his dredging equipment in a dredging business was at most an incidental unintended consequence of the building of dams in the vicinity.

### Conclusion

Defendant's motion for summary judgment is allowed. The clerk is directed to enter an order dismissing the complaint and awarding to defendant all its allowable costs.