CoweN, Chief Judge,
delivered the opinion of the court:
The petition in Docket No. 125-61 was filed to recover additional compensation for property of the Klamath Tribe disposed of or taken by the United States during the termination of Federal supervision over the affairs of the tribe and its members pursuant to the Klamath Termination Act of August 13, 1954, 68 Stat. 718. Thereafter, on March 22, 1962, the petition in Docket No. 87-62 was filed by a number of withdrawing members of the tribe suing in their own behalf for additional compensation for property disposed of or taken by the United States during the Klamath termination. Motions were filed in each case by the United States for the purpose of obtaining a determination by the court whether the claims were owned by the tribe or individual members, and by order of April 24,1964, the court denied both motions and consolidated the actions for all further proceedings.
On June 26,1964, a second amended petition was filed in Docket 125-61 in which a large number of additional individual plaintiffs were added and the claim for additional compensation for property disposed of or taken during the Klamath Termination Program was restated. However, for the first time, the second amended petition asserts in paragraph 21 thereof a claim for a general accounting. It is to this claim that defendant’s motion for judgment on the pleadings is directed.
Defendant’s motion presents a significant question regarding the jurisdiction of this court, for it is defendant’s position *486 that the United States has not given its permission for an independent suit against itself for a general accounting. Since the claim asserted in paragraph 21 in the petition is viewed by defendant as being one strictly for such specific relief, the defendant has moved that the petition in Docket No. 125-61 should be dismissed for lack of jurisdiction insofar as it demands a general accounting against the United States.
On the other hand, plaintiffs view the situation in different and alternative lights. First, they assert that under the provisions of Section 24 of the Indian Claims Commission Act, 60 Stat. 1049, 1055, as amended, 68 Stat. 102, 28 U.S.C. § 1505, as explained by the legislative history and read in context of the fiduciary relationship that exists or has existed between the Indians and the United States, the court has jurisdiction to order the Government to render an accounting to its Indian wards. Secondly, plaintiffs advance the theory that the claim is really one where the relief sought is money damages, the accounting being incident to the relief sought. Plaintiffs point to paragraph 21 (f) of the amended petition wherein they allege the defendant breached its statutory duties as a fiduciary and thereby caused loss and damage to plaintiffs.
It is settled beyond peradventure that the United States may not be sued without its consent. Moreover, this court cannot freely entertain suits of diverse and sundry natures simply because the United States is said to be the offending party. Our jurisdiction is limited by the strictures imposed by 28 U.S.C. § 1491, popularly referred to as the “Tucker Act,” and by the provisions of Section 24 of the Indian Claims Commission Act, 28 U.S.C. § 1505,[1] which extend to Indian *487 tribes, bands, and groups the rights of other Americans to sue their Government under the Tucker Act.
In plaintiffs’ first theory of consent, noted above, they assert that it was the intent of Congress in passing Section 24 of the Indian Claims Commission Act to do something more than extend the jurisdiction of this court under the Tucker Act to claims brought by Indian tribes on causes of action accruing after the enactment of the Indian Claims Commission Act. After examining the legislative history and plaintiffs’ arguments pertinent thereto, we conclude that the “something more” is missing from the legislative record. The court is well aware of the purposes behind the enactment of the Indian Claims Commission Act, see e.g., Creek Nation v. United States, 168 Ct. Cl. 483 (1964). Congress recognized its duty to clean the Augean stables of past generations and correct, in part, wrongs accorded the Indians by giving them a fair day in court to seek redress of their legitimate grievances. In order to do so, it created a commission vested with the authority to hear and decide not only legal claims presented by the Indians but those of an equitable and moral nature as well. Thus, in Section 2 of the Indian Claims Commission Act, 25 U.S.C. 70a, Congress expressly included in the jurisdiction of the Commission (in subparagraphs (1) and (2)) claims “in law or equity” and (in subparagraph (3)) claims “cognizable by a court of equity”. The breadth of this jurisdictional grant is in sharp contrast with the language of 28 U.S.C. § 1505, which merely gives to Indian tribes the same rights to sue in this court as are granted to others under our general jurisdictional statute, 28 U.S.C. § 1491.
It is fundamental that an action for accounting is an equitable claim and that courts of equity have original jurisdiction to compel an accounting, Village of Brookfield v. Pentis, 101 F. 2d 516, 520-521 (7th Cir. 1939); 54 Am. Jur. Trusts §§ 276, 507. Cf. Garrett v. First Nat. Bank & Trust Co., 153 F. 2d 289 (5th Cir. 1946). See also Bogert, Trusts db Trustees, §§963, 989 (1948). Our general jurisdiction under the Tucker Act does not include actions in equity. United States *488 v. Jones, 131 U.S. 1 (1889) and Clay v. United States, 210 F. 2d 686 (D.C. Cir. 1958), cert. denied, 347 U.S. 927 (1954). In Glidden Co. v. Zdanok, 370 U.S. 530, 557 (1962), the Supreme Court stated:
From the beginning it [the Court of Claims] has been given jurisdiction only to award damages, not specific relief.
Although we may exercise equitable powers in some instances as an incident of our general jurisdiction,[2] we do not have jurisdiction to entertain an action brought solely to obtain specific equitable relief. In reaching this conclusion, we deem it to be a factor of controlling importance that when Congress by special jurisdictional acts authorized suits by Indian tribes in this court for a general accounting, Congress took the pains to make specific provision for such extra-legal relief. See e.g., The Uintah and White River Bands of Ute Indians v. United States, No. 47574, and The Confederated Bands of Ute Indians v. United States, Ct. Cl. No. 47567, both brought under the Jurisdictional Act of June 28, 1938, 52 Stat. 1209*; Confederated Salish and Kootenai Tribes v. United States, 173 Ct. Cl. 398 (1965), under the Jurisdictional Act of July 30,1946, 60 Stat. 715.
Although we would not say that it is conclusive on the precise question now before us, the legislative history is generally adverse to plaintiffs’ position and serves to point up the differences between the jurisdiction conferred on the Indian Claims Commission and that vested in this court under the provisions of 28 U.S.C. §§ 1491 and 1505. In the debate in the House on H.R. 4497, which became the Indian Claims Commission Act, the then Congressman Jackson stated:
* * * Let us at least pay what we promised to pay, if we have not already done so, and let us see that the Indians have their fair day in court so that they can call the various Government agencies to account on the obligations that the Federal Government assumed. And let us make sure that when the Indians have their day in court they have an opportunity to present all their claims of
*489 every kind, shape, and variety, so that this problem can truly be solved once and for all without coming back to haunt us or our successors in the form of further bills to extend the jurisdiction that this bill would confer on an Indian Claims Commission.
# H: H* ❖
The most important section of the bill is section 2, which defines the jurisdiction of the claims and counterclaims that the Indian Claims Commission is to consider. It was the unanimous opinion of the committee that the jurisdiction of the Commission ought to be broad enough so that no tribe could come back to Congress 10 years from now and say that it had a meritorious claim' which the Claims Commission was not authorized to consider.
. In order to make sure that we have included all possible claims within the jurisdiction of the Commission, we have gone over the various special Indian jurisdictional acts that Congress has passed in recent years and put together the various phrases that are used in these different acts. We might have condensed this language but we thought it.best even at the risk of some duplication or overlapping to make sure that we had covered every sort of case which Congress has in recent years considered worthy of a hearing. It will be noted that some of the categories refer to purely legal claims, while others refer to' claims based on equity and fair dealing, * * * [92 Cong. Kec. 5312-5313 (1946)]. . . . -
It is obvious from the context that the foregoing remarks were addressed to the broad jurisdiction which the bill proposed to confer on the Indian Claims Commission. However, when Congressman Jackson reached Section 24 of the bill in his remarks, he stated:
Finally, section 24 of the bill provides that with respect to all grievances that may arise hereafter Indians shall be treated on the same basis as other citizens of the United States i/n suits before the Court of Claims, so that it will never again be necessary to pass special Indian jurisdictional acts in order to permit the Indians to secure a court adjudication on any misappropriations of Indian funds or of any other Indian property by Federal officials that might occur in the future. [92 Cong. Kec. 5313 (1946).] [Emphasis supplied.]
We think Section 24 of the Act does exactly what Congressman Jackson said it was intended to do; namely, it gives tq Indian tribes the same right to sue in this court as is *490 granted to others under the Tucker Act. This was a right which had theretofore been denied the Indians and led to the passage of many special jurisdictional acts under which this court decided Indian claims prior to the enactment of the Indian Claims Commission Act.
Although it was first codified under 25 U.S.C. § 70w, Section 24 of .the Indian Claims Commission Act was transferred to the Judicial Code in 1949, by an amendment (63 Stat. 102) and now appears as 28 U.S.C. § 1505. The recodification omits as unnecessary the provision of Section 24 concerning the fiduciary relationship of the United States to the Indians.[3]
Finding nothing in the language of Section 24 or in the legislative history of the Act upon which to base such a view, we conclude that the omitted language does not confer jurisdiction on this court to entertain an independent action by an Indian tribe for a general accounting. We think the purpose of the omitted language was to make it clear that the new legislation did not' discharge or cancel any fiduciary obligations of the United States and to vouchsafe the right of the Indians to sue in .this court on a timely claim to recover money damages that result from the Government’s breach of any such obligations that arise under “the Constitution, laws, treaties of the United States, or Executive orders of the President.” Such a claim is contained in paragraph 21(f) of the second amended petition in Docket No. 125-61. Although the allegations of that subparagraph are very general in nature and are obscured by placement under a paragraph headed “General Accounting”, they are sufficient to withstand defendant’s motion to dismiss. We agree with plaintiffs that the court has the power to require an accounting in aid of its jurisdiction to render a money judgment on that claim, but we disagree with plaintiffs on the applicable procedure. Plaintiffs proceed on the assumption that the defendant’s liability for mismanagement of plaintiffs’ funds and property is established, but this assumption meets head on with a strong denial by the defendant. Therefore, it is not enough for *491 plaintiffs to allege that the defendant has violated its statutory fiduciary duties to plaintiffs; they must go further and assume the burden of proving specifically how the defendant and its agents have failed in their duty to plaintiffs. To require the Government ab initio to render a general accounting on the basis of unproved allegations and before its liability is determined would convert this proceeding from a suit for money damages to an independent equitable action for a general accounting. In their original brief in opposition to defendant’s motion (see pages 26-27 of plaintiffs’ brief), plaintiffs point out that they took nq objections to defendant’s motion for a separate trial of the Klamath claim on the issues of law and fact relating to the-right'of plaintiffs to recover pursuant to Rule 47(b). The motion was allowed by pretrial order of October 19, 1964. In this connection plaintiffs’ brief states:
* * * By this trial the plaintiffs will demonstrate that the defendant has violated duties and obligations imposed by Congress.
Although plaintiffs have apparently receded from this position in the supplemental memorandum they filed after defendant’s motion to dismiss was argued, we think the Rule 47 (b) procedure should be followed as to the cause of action asserted in paragraph 21 (f) of the petition as ordered by the trial commissioner. If, after a trial on the issue of liability, it is held that defendant has violated its statutory fiduciary obligations, it will be within the jurisdiction of the court to order the defendant in its capacity as a trustee to render an accounting for the purpose of enabling the court to determine the amount which plaintiffs are entitled to recover.
We emphasize that our action today does not leave the Klamath Tribe and the individual Indians without a forum for the recovery of any damages to which they are entitled because of the Government’s mishandling of tribal funds and property. No special jurisdictional act is required to provide that relief. In its brief, defendant states that it has already furnished to plaintiffs all the records pertaining to the termination of Federal supervision of the Klamath Indians, but if defendant refuses to provide on plaintiffs’ request additional documents and records that are needed by plaintiffs *492 in presenting tlieir case as to defendant’s liability, discovery is available to plaintiffs under the rules of tbis court.
For the reasons stated above, the second amended petition in Docket No. 125-61 is dismissed to the extent that it asserts as an independent action a demand for a general accounting against the United States, and the case is returned to the trial commissioner for further proceedings in accordance with this opinion.

TRe jurisdiction of the Court of Claims is hereby extended to any claim against the united States accruing after the date of the approval of this Act in favor of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws," treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Claims if the claimant were not an Indian tribe, band, or group. In any suit brought under the jurisdiction conferred by this section the claimant shall be entitled to recover in the same manner, to the same extent, and subject to the same conditions and limitations, and the United States shall be entitled to the same defenses, both at law and in equity, and to the same offsets, counterclaims, and demands, as in cases brought in the Court of Claims under section 145 of the Judicial Code (36 Stat. 1136; 28 U.S.C., sec. 250), as amended: Pro *487 vided, however, That nothing contained in this section shall be construed as altering the fiduciary or other relations between the united States and the several Indian tribes, bands, or groups. [60 Stat. 1055-1056 (1946), 28 U.S.C. § 1505]

 See Milliken Imprinting Co. v. United States, 40 Ct. Cl. 81, 107 (1904), reversed on other grounds, 202 U.S. 168, 173-174 (1906) ; Aetna Construction Co. v. United States, 46 Ct. Cl. 113, 127 (1911).

 There are no opinions in these two cases which were settled by stipulation of the parties.

 “Tlie proviso of such section 24 is omitted as unnecessary since the provision conferring jurisdiction cannot in any view alter the relationship of the Government with its Indians.” [2 U.S. Cong. Serv. 1269 (1949).] •