SOMMERS OIL COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–272C.

United States Court of Federal Claims.

March 16, 2000.

Timothy M. O'Brien, Oliver Maner & Gray LLP, Savannah, GA, for plaintiff.

Kathleen A. Quill, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

### *ORDER*

MILLER, Judge.

Before the court on defendant's motion to dismiss are presented the questions whether the court has jurisdiction over a claim that the Government refused to turn over to a cooperating witness payments claimed to be held in trust that came from a non-tax paid "bootleg" gasoline and diesel fuel scam, whether the complaint states a claim upon which relief can be granted, and whether the statute of limitations has run. Because the court lacks jurisdiction over Counts II and IV and Counts I and III fail to state a claim upon which relief can be granted, defendant's motion to dismiss is granted. Argument is deemed unnecessary.

### FACTS

Sommers Oil Company ("plaintiff") is a Georgia corporation engaged in the business of retail and wholesale distribution of petroleum products. Plaintiff alleges that on or about February 26, 1992, its president, Jackie M. Sommers, Sr., voluntarily agreed to cooperate with the Internal Revenue Service Criminal Investigation Division ("CID") in its investigation of Michael Vax. CID's investigation focused on Mr. Vax's scheme to evade payment of certain federal and state fuel excise taxes while charging gasoline distributors as if the taxes had been paid. Pursuant to this scheme, Mr. Vax offered to sell Mr. Sommers gas at 4¢ per gallon below market price if Mr. Sommers agreed to pay the applicable fuel taxes directly to Mr. Vax. Mr. Vax further agreed that, if he could not supply the gas, he would reimburse plaintiff at 5¢ per gallon. Mr. Sommers informed CID Special Agent Gary Purvis of Mr. Vax's proposal. Special Agent Purvis, and his CID superiors, allegedly agreed that plaintiff could retain the reimbursements from Mr. Vax if he agreed to cooperate with its investigation.

Mr. Sommers accepted the offer and, pursuant to CID's instructions, agreed to participate in Mr. Vax's criminal enterprise. In the fall of 1992, Mr. Vax informed Mr. Sommers that his reimbursements, totaling some $41,-000.00, were now available. A CID Special Agent, sent on Mr. Sommers's behalf, collected the money from Mr. Vax and, thereafter, Mr. Vax was arrested and charged. When Mr. Sommers requested that the CID return the $41,000.00, he was told that it was needed as evidence against Mr. Vax in the pending criminal case. Subsequent to Mr. Vax's guilty plea, on December 28, 1994, and sentencing, on March 16, 1995, Mr. Sommers again requested return of the $41,000.00. Thereafter, Mr. Sommers allegedly pursued various claims for these funds through administrative channels. On November 1, 1996, plaintiff received a letter from CID rejecting these requests.

On May 3, 1999, plaintiff filed this suit expounding alternative theories of recovery: a violation of the due process clause of the Fifth Amendment (Count I), a taking without just compensation in violation of the Fifth Amendment (Count II), a breach of contract (Count III), and breach of a constructive trust (Count IV). Defendant moved to dismiss for lack of jurisdiction and for failure to state a claim and based on expiration of the statute of limitations.

### DISCUSSION

1. *Standard for a motion to dismiss for failure to state a claim upon which relief can be granted and for lack of jurisdiction*

When a federal court reviews the sufficiency of the complaint, pursuant to a motion to dismiss, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* To this end, the court must accept as true the facts alleged in the complaint, *see Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988), and must con-

strue such facts in the light most favorable to the pleader. *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). It is well-settled doctrine that a complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Therefore, when the facts alleged in the complaint reveal "any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (citations omitted).

■ The burden of establishing that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction. *See Reynolds,* 846 F.2d at 748. At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Fed.,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). However, because proper jurisdiction is not merely a pleading requirement, "but rather an indispensable part of the plaintiff's case, each element [of subject matter jurisdiction] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing *National Wildlife Fed.,* 497 U.S. at 883–89, 110 S.Ct. 3177; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 114–15 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 527 n. 6, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Brennan, J., dissenting)). Therefore, as the party invoking federal jurisdiction in the action, plaintiff bears the burden of pleading the facts upon which the court's jurisdiction depends. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

The Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. It is well settled that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). It is the terms of its consent which limit this court's authority to grant relief against the United States. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The Supreme Court has stated that a waiver of sovereign immunity "cannot be implied but must unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Tucker Act, 28 U.S.C.A. § 1491 (West 1994 & Supp.1999), the primary statute which defines the Government's waiver of sovereign immunity as it pertains to the Court of Federal Claims, states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1). While conferring jurisdiction, the Tucker Act itself does not create a substantive right enforceable against the United States for monetary damages. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541 (Fed.Cir.1996). Thus, a plaintiff must found its claim on a contract or separate money-mandating statute to invoke this court's jurisdiction. *See Testan,* 424 U.S. at 398–401, 96 S.Ct. 948.

### 2. *Violation of the due process clause of the Fifth Amendment*

■ In Count II of the complaint, plaintiff claims relief because the Government's actions violated the due process clause of the Fifth Amendment to the United States Constitution. Defendant argues that because the due process clause of the Fifth Amendment

does not mandate the payment of money, this claim must be dismissed for lack of subject matter jurisdiction. Plaintiff offers no response to this contention in its brief.

Not every claim involving or invoking the Constitution necessarily confers jurisdiction on the Court of Federal Claims. *See Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967). "[T]he basis of a federal claim—whether it be the constitution, a statute, or a regulation—does not create a cause of action for money damages unless ... that basis in itself can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Testan*, 424 U.S. àt 401–02, 96 S.Ct. 948 (internal quotation omitted). The takings clause of the Fifth Amendment, which prohibits the taking of private property for public purpose without just compensation, is one such example. *See id.* However, nothing in the due process clause of the Fifth Amendment can be read to mandate monetary compensation. *See Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir.1995) (citing cases). Accordingly, Count II of plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.

### 3. *Constructive trust*

█ In Count IV of the complaint, plaintiff alleges that the Government held a constructive trust for plaintiff's benefit over the $41,000.00 taken from Mr. Vax, which the Government violated by not returning these funds to plaintiff at the cession of his criminal case. Defendant argues that the creation of a constructive trust is an equitable remedy over which the Court of Federal Claims does not have jurisdiction. Plaintiff concedes, as it must, that the court does not have general equitable powers, and it is well settled that "[t]he claim of constructive trust is a claim for an equitable remedy." *Frank & Breslow, LLP v. United States*, 43 Fed.Cl. 65, 68 (1999) (citing *Last Chance Mining Co. v. United States*, 12 Cl.Ct. 551, 555 (1987), *aff'd without op.*, 846 F.2d 77 (Fed.Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988)). Plaintiff attempts to avoid this cardinal restriction on jurisdiction by referring to a line of decisions which allow the incidental exercise of equitable powers to arrive at a money judgment. *See, e.g., Pauley Petroleum, Inc. v. United States*, 219 Ct.Cl. 24, 38–40, 591 F.2d 1308, 1316–17 (1979); *Klamath & Modoc Tribes v. United States*, 174 Ct.Cl. 483, 488, 1966 WL 8850 (1966). The cases cited by plaintiff, however, do not extend the court's exercise of equitable powers to the granting of a constructive trust. These cases deal exclusively with the rescission or reformation of a contract. *See Marathon Oil Co. v. United States*, 17 Cl.Ct. 116, 118–19 (1989). As the United States Court of Claims explained in *Carney v. United States*, 199 Ct.Cl. 160, 163–64, 462 F.2d 1142, 1145 (1972) (citations omitted), "[w]e may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and enforcing it as reformed in an action at law. But our general jurisdiction under the Tucker Act, 28 U.S.C. § 1491, does not include an action for 'specific equitable relief.' " Accordingly, Count IV of plaintiff's complaint also must be dismissed for lack of jurisdiction.

### 4. *Contract claims*

█ In Count III of the complaint plaintiff alleges that an enforceable contract was created when CID Special Agent Purvis and his superiors agreed to let plaintiff retain the reimbursements from Mr. Vax if Mr. Sommers cooperated in the criminal enterprise. Defendant's refusal to pay plaintiff the $41,000.00 collected from Mr. Vax, plaintiff contends, is a breach of contract. Defendant argues that Count III fails to state a claim upon which relief can be granted because no enforceable contract arose between plaintiff and the United States. To establish the existence of a contract, whether express or implied, plaintiff must prove the following elements: offer, acceptance, and consideration. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). Additionally, plaintiff bears the burden of demonstrating that the representative who entered into the agreement had actual authority to bind the Government. *See id.*

█ Defendant first contends that Count III must be dismissed because an agency, as a matter of public policy, cannot be bound to

a promise to refrain from the exercise of its lawful duties in obtaining evidence. Under strikingly similar circumstances the Court of Federal Claims has rejected the contract claims of informants to recover funds exchanged in a criminal enterprise. *See Garza v. United States,* 34 Fed.Cl. 1 (1995); *Howard v. United States,* 31 Fed.Cl. 297 (1994). In *Garza* plaintiffs claimed entitlement to transport fees paid to them by alleged drug smugglers while they cooperated with a government sting operation. Although government agents had promised to allow plaintiffs to retain these fees, they were ultimately seized as evidence and never recouped. The court rejected plaintiffs' claim to recover the funds, holding that although government officials had agreed to refrain from confiscating the transport fees and allow plaintiffs to keep the ill-gotten gains, such an agreement could not constitute a valid or binding obligation because of the overriding public policy concern to respect prosecutorial discretion. *See Garza,* 34 Fed.Cl. at 11. "Prosecutorial discretion dictates that a law enforcement agency cannot be bound to conduct, or not to conduct, its investigation in a certain manner." *Id.* at 12. Similarly, in *Howard,* plaintiffs agreed to assist the Government in an illegal arms transaction in exchange for permission to retain a 5– to –10% commission on the deal. The court denied relief, holding that "a promise of a federal law enforcement agency to refrain from the exercise of its lawful duties in obtaining evidence for the prosecution of a suspected criminal as a matter of public policy cannot bind the agency." *Howard,* 31 Fed.Cl. at 308. As in the case at bar, prosecutorial discretion overcomes CID's alleged promise to refrain from confiscating evidence obtained as part of a criminal enterprise. Although the decisions in both *Garza* and *Howard* follow trials, the rule of law that emerges can pretermit consideration of the same claims as a matter of law.

Plaintiff does not challenge this interpretation of *Garza* or *Howard.* Rather, in seeking to avoid the result mandated by those decisions, plaintiff cites *Merrick v. United States,* 846 F.2d 725 (Fed.Cir.1988), as countervailing precedent. IRS agents in *Merrick* orally promised a reward to plaintiff, a tax informant, in exchange for cooperation in exposing a tax shelter. The amount of the reward was to be calculated based upon the amount recovered by exposing the tax shelter. After the IRS paid the informant a sum less than the calculated figure, the informant sued. The Federal Circuit, in reversing the Claims Court's dismissal for failure to state a claim, held that an enforceable contract was created and that the informant was entitled to recovery. *See id.* at 726. However, the situation in *Merrick* differs fundamentally from that in *Garza* and *Howard.* In *Merrick* the informant's reward was independent of the funds exchanged in the criminal enterprise. No issue of prosecutorial discretion was present in *Merrick* because the promised reward was not potential evidence. While calculation of the reward was tied to the sums defrauded by the tax shelter scheme, the reward itself was not evidence of the illegality. In *Garza* and *Howard,* as in the case at bar, government officials promised to allow plaintiffs to retain funds which were exchanged in the criminal enterprise. The funds themselves were evidence of criminal wrongdoing and, therefore, subject to prosecutorial discretion.

 Defendant next contends that Count III must be dismissed because the alleged agreement lacked consideration. Plaintiff offers no response to this contention in its brief. Proof of an enforceable contract requires plaintiff to show that consideration passed between the parties. *See Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.1997). The court in *Garza* addressed precisely this issue, holding that because the Government had no control over whether the criminals would make payment, the situation "obviously lack[ed] adequate consideration for a contract." *See Garza,* 34 Fed.Cl. at 12 n. 4. According to the complaint, the agreement between plaintiff and CID was only that if Mr. Vax reimbursed plaintiff, CID would refrain from confiscating the money. Because the reward for cooperation was to be paid by Mr. Vax, and not by CID, CID could not have promised plaintiff any minimum payment. Thus, the only consideration CID could have given plaintiff was forbearance from seizing the reimbursements as evidence—a promise which other persua-

sive decisions of the court have ruled is not subject to enforcement.

Defendant finally contends that Count III must be dismissed because the CID officials plaintiff allegedly contracted with lacked authority to bind the Government. Again plaintiff offers no response to this contention in its brief. "Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, regardless of the agent's representations." *Doe v. United States,* 100 F.3d 1576, 1584 (Fed.Cir.1996) (citations omitted). "A claimant for money damages for breach of an express or implied in fact contract must plead and prove that the officer who supposedly made the contract had authority to obligate the Government." *Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268 (1981). As defendant correctly notes, plaintiff has failed to plead either express or implied actual authority upon the part of the Government agents involved. For the foregoing reasons, Count III of the complaint must be dismissed.

### 5. *Taking without just compensation*

▪ In Count I of the complaint, plaintiff alleges that CID's refusal to turn over the $41,000.00 in reimbursements amounts to a taking of private property without just compensation in violation of the Fifth Amendment. Defendant argues that Count I fails to state a claim upon which relief can be granted because plaintiff has not identified a right in the property allegedly taken. Because the $41,000.00 was exchanged as part of a criminal enterprise, plaintiff could have only acquired legal rights to it by virtue of an enforceable contract with the Government. As the above discussion demonstrates, no enforceable contract arose. Accordingly, Count I must also be dismissed.

### 6. *Statute of limitations*

▪ Defendant invokes the bar of the statute of limitations. The general statute of limitations for a cause of action before the Court of Federal Claims is six years. *See* 28 U.S.C. § 2501 (1994). A cause of action in this court is "barred unless the petition thereon is filed within six years after such

claim first accrues." *Id.* A cause of action accrues, and the statute of limitations begins to run, when a plaintiff is "armed with the facts about the harm done to him." *United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In the context of a cause of action against the Government, this is typically the date when all events have occurred to fix the liability of the United States and entitle the plaintiff to demand relief. *See, e.g., L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359, 1365 (Fed.Cir.1982). CID obtained the $41,000.00 in reimbursements from Mr. Vax in the fall of 1992. Although plaintiff's attempts to recover the money at that point were rebuffed, plaintiff was assured that these funds would be at the termination of the criminal case against Mr. Vax. Mr. Vax finally was sentenced on March 16, 1995. Thereafter, plaintiff diligently pursued recovery of the $41,000.00. On November 1, 1996, plaintiff received a letter from CID advising him that these funds would never be returned. Construing the allegations in the complaint as true, plaintiff did not become aware that he would be deprived permanently of the reimbursements, and the statute of limitations did not begin to run, until November 1, 1996. Therefore, plaintiff's complaint, filed on May 3, 1999, came well within the six-year limitations period.

### 7. *Transfer*

Should the court hold that it lacks jurisdiction over Counts II and IV, plaintiff requests a transfer of its claims to United States District Court for the Southern District of Georgia. Pursuant to 28 U.S.C. § 1631 (1994), the court retains the power to transfer a claim over which it lacks subject matter jurisdiction if at the time it was filed, the action could have been brought in the transferee court and if transfer serves the interests of justice. Although plaintiff has not addressed the first criterion, no apparent jurisdictional bar would preclude the district court's entertaining these claims, and the interests of justice would be served by allowing plaintiff to proceed. *See United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1374 (Fed.Cir.1983). In this case the court con-

siders that the interests of justice would be served by a transfer of the counts over which the lack lacks jurisdiction.

### CONCLUSION

Accordingly, based on the foregoing:

1. Defendant's motion to dismiss is granted, and the Clerk of the Court shall enter judgment for defendant on Counts I and III of the complaint.

2. Plaintiff's motion to have Counts II and IV transferred to United States District Court for the Southern District of Georgia is granted, and the Clerk of the Court shall transfer the complaint as to these counts.

**IT IS SO ORDERED.**

No costs.