Justice Sotomayor,
with whom Justice Breyer joins, concurring in the judgment.
Congress enacted the statute currently codified at 28 U. S. C. § 1500 to put an end to parallel litigation seeking duplicative relief against the United States and its agents. Respondent Tohono O’odham Nation (Nation) seeks in the *319 Court of Federal Claims (CFC) some of the same relief on the same facts as it does in its pending District Court action. Accordingly, applying our decision in Keene Corp. v. United States, 508 U. S. 200 (1993), I agree with the Court that § 1500 bars the Nation’s CFC action. Because the Nation’s two actions seek overlapping relief, this case does not present the question that the Court decides today — whether § 1500 bars an action in the CFC when the plaintiff’s actions share a common factual basis but seek different forms of relief. Nonetheless, the Court holds that a common factual basis alone suffices to bar jurisdiction in the CFC. Under the Court’s reading of the statute, a plaintiff cannot pursue a claim in the CFC based on the same facts as another pending action, even when Congress has required that plaintiff to file separate actions in two courts to obtain different forms of relief necessary to make the plaintiff whole. I cannot agree that § 1500 demands this result.
hH
Section 1500 bars jurisdiction in the CFC over any claim for or in respect to which the plaintiff... has pending in any other court any suit or process against the United States” or any agent of the United States. In Keene, we construed this statute to “turn on whether the plaintiff’s other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested.” Id., at 212. It was irrelevant for purposes of § 1500, we observed, that the two suits proceeded on different legal theories. Ibid. Because the plaintiff’s actions both sought the same monetary relief, albeit on different theories, we held that the CFC lacked jurisdiction. Id., at 217-218. We thus found “it unnecessary to consider” whether § 1500 barred a CFC claim that was based on substantially the same operative facts as another suit but that sought different relief. See id., at 212, n. 6, 216.
*320 As construed in Keene, § 1500 bars the Nation’s CFC action. As the maj ority holds, see ante, at 317-318, the Nation’s CFC and District Court actions are based on nearly identical facts. The two actions also seek overlapping relief: Both complaints request money to remedy the same injury — the Government’s alleged breach of its fiduciary duty to maintain accurate accounts of the Nation’s assets. The Nation does not dispute that its District Court complaint requests such relief.[1] See Brief for Respondent 51 (“If ... the accounting reveals that assets that belong to the Nation do not appear on the books, it may be appropriate to order equitable restitution of those assets”). The Nation’s CFC complaint is fairly read to do the same. The CFC complaint alleges that the Government has failed “to keep and render clear and accurate accounts.” App. to Pet. for Cert. 66a. It claims that by reason of this and other alleged breaches of fiduciary duty, the Nation “has been damaged in such amounts as may be proven at trial.” Id., at 67a. And the complaint requests “a determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant’s breaches of fiduciary duty” and a “determination of the amount of damages due the Nation.” Id., at 72a-73a. Thus, just like the District Court complaint, the CFC complaint requests money to remedy the Government’s alleged failure to keep accurate accounts.[2]
*321 Because the Nation’s two complaints are “based on substantially the same operative facts” and there is “at least... some overlap in the relief requested/’ Keene, 508 U. S., at 212, § 1500 bars jurisdiction over the Nation’s CFC action.
II
The case does not present the question, left open in Keene, “whether common facts [alone] are sufficient to bar a CFC action where a similar case is pending elsewhere.” Ante, at 317. Indeed, for most of the history of this case, the Government did not even argue that common facts were sufficient to preclude CFC jurisdiction; until its petition for rehearing in the Court of Appeals, the Government argued only that Keene required dismissal of the Nation’s CFC action because the Nation’s two actions were based on the same facts and sought overlapping relief. Deciding this case on the basis of Keene would have been the “far more prudent course than recharacterizing the case in an attempt to reach premature decision on an important question.” Missouri v. Jenkins, 495 U. S. 33, 80 (1990) (Kennedy, J., concurring in part and concurring in judgment). Instead, discarding the restraint we exhibited in Keene, the Court unnecessarily chooses to hold that §1500 bars jurisdiction in the CFC whenever a plaintiff’s CFC action is based on substantially the same facts as a suit pending elsewhere.[3] This reading of § 1500 is, in my opinion, incorrect.
*322 A
Since the enactment of §1500 in 1868, Congress has expanded the avenues by which persons with legitimate claims against the United States may obtain relief. See ante, at 314. In some circumstances, Congress has chosen to require plaintiffs to file actions in two different courts to obtain complete relief relating to a single set of operative facts. For example, with some exceptions, the CFC has no power to issue equitable relief. See Bowen v. Massachusetts, 487 U. S. 879, 905 (1988); see also 28 U. S. C. § 1491(a). As a result, a plaintiff seeking both money damages and injunctive relief to remedy distinct harms arising from the same set of facts may be forced to file actions in both the CFC and federal district court.
For half a century, the CFC has recognized that § 1500 does not preclude jurisdiction in that court when Congress has required a plaintiff to split a claim into two actions to obtain different forms of relief necessary to make the plaintiff whole. In Casman v. United States, 135 Ct. Cl. 647 (1956), a terminated federal employee sought backpay in the Court of Claims and reinstatement to his position in District Court. The plaintiff's two suits arose from the same facts (his termination) but sought “entirely different” forms of relief within the exclusive jurisdiction of two courts.[4] Id., at 650. In light of our previous recognition that the purpose of § 1500 “ ‘was only to require an election between a suit in the Court of Claims and one brought in another court,’” id., *323 at 649 (quoting Matson Nav. Co. v. United States, 284 U. S. 362, 365-356 (1932)), the Court of Claims held that § 1500 was inapplicable when a “plaintiff has no right to elect between two courts,” 135 Ct. CL, at 650. To hold otherwise, the court acknowledged, “would be to say to plaintiff, Tf you want your job back you must forget your back pay’; conversely, Tf you want your back pay, you cannot have your job back.’” Ibid.; see also Loveladies Harbor, Inc. v. United States, 27 F. 3d 1545, 1551 (CA Fed. 1994) (en banc) (reaffirming Casman’s inquiry into the form of relief sought).
By reserving the question “whether two actions based on the same operative facts, but seeking completely different relief, would implicate §1500,” our decision in Keene expressly preserved the Gasman holding. 508 U. S., at 212, n. 6. The consequence of today's decision is clear: The Gasman rule is no longer good law. Under the majority’s reading of § 1500, because Casman’s two suits were based on common facts, §1500 barred jurisdiction in the CFC over his backpay claim even though he could not have obtained back-pay in his District Court action.
The jurisdictional scheme governing actions against the United States often requires other plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts. As just one example, an action seeking injunctive relief to set aside agency action must proceed in district court, but a claim that the same agency action constitutes a taking of property requiring just compensation must proceed in the CFC. See, e. g., Alaska v. United States, 32 Fed. Cl. 689 (1995). After today’s decision, § 1500 may well prevent a plaintiff from pursuing a takings claim in the CFC if an action to set aside the agency action is pending in district court. This type of plaintiff may face a choice between equally unattractive options: forgo injunctive relief in the district court to preserve her claim for monetary relief in the CFC, or pursue injunctive relief and hope that the statute of limitations on her takings claim, see 28 U. S. C. *324 §2501, does not expire before the district court action is resolved.[6]
B
The text, purpose, and history of § 1500 provide strong reason to believe that Congress did not intend for § 1500 to put plaintiffs to a choice between two nonduplicative remedies that Congress has made available exclusively in two forums. The statute bars jurisdiction in the CFC over a *325 “claim for or in respect to which” a plaintiff has a suit or process pending elsewhere. When Congress first enacted § 1500’s predecessor, the statute establishing the jurisdiction of the Court of Claims used the term “claims” to refer to demands for money damages. See Act of Mar. 3, 1863, §§2-3, 12 Stat. 765; see United States v. Jones, 131 U. S. 1, 17 (1889) (noting that the statute’s provisions “were inconsistent with the enforcement of any claims under the law except claims for money”).[6] Congress thus would have understood the term “claim” in § 1500 to describe the particular relief sought in the Court of Claims. Cf. Commissioner v. Keystone Consol. Industries, Inc., 508 U. S. 152, 159 (1993).
Determining the meaning of “claim” is only part of the inquiry, however. The question remains what constitutes a suit or process “for or in respect to” a CFC claim. The purpose and history of the statute elucidate the meaning of this ambiguous phrase. As the majority explains, Congress enacted the statute to prevent “duplicative lawsuits” brought by the so-called “cotton claimants” in the aftermath of the Civil War. Keene, 508 U. S., at 206; see ante, at 311-312. The cotton claimants sought monetary compensation for seized cotton in the Court of Claims pursuant to the Abandoned Property Collection Act, 12 Stat. 820. Because they had difficulty satisfying the statutory requirement that, to obtain compensation, they must not have given aid or comfort to participants in the rebellion, see § 3 of the Act, they also sought relief — either in the form of money damages or actual cotton — in separate lawsuits against federal officials *326 on tort theories such as conversion. “It was these duplicative lawsuits that induced Congress” to enact § 1500’s predecessor. Keene, 508 U. S., at 206.
This historical backdrop sheds light on what Congress would have understood to be a suit or process “for or in respect to” a “claim” in the Court of Claims. Congress undoubtedly intended to preclude a claim for money in the Court of Claims when the plaintiff was pursuing a suit “for” the same money in district court. Because, however, some cotton claimants sought return of the cotton itself in district court, it was also necessary to preclude jurisdiction in the Court of Claims when the plaintiff's other action was “in respect to” that demand for money — i. e., when the plaintiff was seeking duplicative relief. Had the courts awarded such plaintiffs both the cotton itself and money damages, the plaintiffs would have obtained twice what they deserved. In this way, Congress eschewed “a narrow concept of identity” that would have permitted plaintiffs to pursue and obtain duplicative relief to remedy the very same harm. Id., at 213.
The legislative history confirms Congress’ intent to preclude requests for duplicative relief. The statute’s sponsor explained that the purpose of the statute was “to put to their election that large class of persons having cotton claims[,]... who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims.”[7] Cong. Globe, 40th Cong., 2d Sess., 2769 (1868) (statement of Sen. Edmunds); see also Matson Nav. Co., 284 U. S., at 355-356. Congress thus appears to have had in mind cases in which “the whole ques *327 tion” could be tried in the Court of Claims. The statute’s history does not suggest that Congress intended to require an election between two nonduplicative forms of relief available exclusively in two different courts. In such a case, “the whole question” could not be tried in either court.
2
None of the majority's reasons for its contrary construction of the statute is convincing. First, the majority reasons that the phrase “claim for or in respect to” must refer only to factual overlap because the statute uses the phrase “cause of action ... in respect thereto” (which the majority paraphrases as “in respect to a cause of action”) in a way that is “consistent only with factual overlap.” Ante, at 312. This point rests on a misreading of the statutory text. The statute asks whether a plaintiff has pending a “suit or process” for or in respect to the plaintiff’s CFC claim — not whether it has pending a “cause of action” for or in respect to that claim.[8] Even if the term “cause of action” refers only to operative facts — such that the inquiry whether a person was acting under color of federal law in respect to a cause of action is purely factual in nature — a “suit or process” will inevitably include a request for relief.
Second, the majority states that, “in light of the unique remedial powers of the CFC,” requiring remedial overlap would make no sense because it would result in a “very limited application” of the statute. Ante, at 313,314. Here, the majority overlooks the nearly 150-year history of the statute. It was the cotton claimants’ parallel requests for duplicative relief that prompted passage of § 1500 in the first place. Since then, litigants have continued to seek duplicative relief *328 against the Government in two courts, as Keene and this very case illustrate. See 508 U. S., at 204-205 (seeking tort damages in the District Court and compensation on a takings theory in the CFC); supra, at 318-321 (seeking restitution and disgorgement in the District Court and money damages in the CFC); see also, e. g., Ex parte Skinner & Eddy Corp., 265 U. S. 86, 91-92 (1924) (seeking money damages against the United States in the Court of Claims and against a federal entity in state court); Corona Coal Co. v. United States, 263 U. S. 537, 539 (1924) (seeking money damages against the United States in the Court of Claims and against a federal agent in District Court); British Am. Tobacco Co. v. United States, 89 Ct. Cl. 438, 439-440 (1939) (per curiam) (seeking tort damages in the District Court and contract damages in the Court of Claims). As these cases make clear, interpreting § 1500 to prohibit requests for duplicative relief hardly renders the statute of limited application.
Third, the majority suggests that its construction of § 1500 is necessary to achieve the statute’s aim of “sav[ing] the Government from burdens of redundant litigation. ” Ante, at 315. Parallel actions seeking the same or duplicative relief, or different forms of relief that are available entirely in one court, are redundant; actions seeking different forms of relief that Congress has made available exclusively in different courts are not. To the extent the majority is concerned about the burdens of parallel discovery, federal courts have ample tools at their disposal, such as stays, to prevent such burdens. See Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 573, 599 (1967).
Finally, the majority contends that focusing on operative facts is consistent with the principles of claim preclusion embodied in the statute. Claim preclusion ordinarily “bar[s] claims arising from the same transaction.” Kremer v. Chemical Constr. Corp., 456 U. S. 461, 482, n. 22 (1982). There is, however, an exception to this rule when a plaintiff *329 was unable to obtain a certain remedy in the earlier action. See Restatement (Second) of Judgments §26(l)(c) (1980) (claim preclusion does not apply where “[tjhe plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts”); see also Marrese v. American Academy of Orthopaedic Surgeons, 470 U. S. 373, 382 (1985); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4412, p. 276 (2d ed. 2002). This principle has long informed claim preclusion law. See, e. g., Restatement of Judgments § 62, Comment k (1942) (“[Wjhere a plaintiff brings an action in a State in which the courts have jurisdiction only with reference to one portion of his cause of action, he is not barred from maintaining an action in a proper court for the other portion”); 2 H. Black, Law of Judgments § 618, p. 744 (1891) (“A judgment is not conclusive of any matter which, from the nature of the case, the form of action, or the character of the pleadings, could not have been adjudicated in the former suit”). For these reasons, preclusion doctrine actually undermines the majority’s position.
In sum, the majority offers no coherent justification for its conclusion that Congress intended to preclude jurisdiction in the CFC whenever a plaintiff’s claim in that court is based on substantially the same facts as a suit pending elsewhere without reference to the relief sought.
* * =f=
Even before today’s decision, § 1500 had been described as “anachronistic,” Keene, 508 U. S., at 217, “harsh,” id., at 222 (Stevens, J., dissenting), and “arbitrary],” 79 Fed. Cl. 645, 659, n. 16 (2007). Judges and commentators have long called for congressional attention to the statute. See, e. g., Keene, 508 U. S., at 222 (Stevens, J., dissenting); Schwartz, supra, at 601. Today’s decision — which unnecessarily considers and repudiates the Gasman rule — renders such attention all the *330 more pressing. Under the Court’s construction of §1500, plaintiffs whom Congress has forced to file parallel actions in the CFC and a district court to obtain complete relief must now choose either to forgo relief in the district court or to file first in the district court and risk the expiration of the statute of limitations on their claims in the CFC. I cannot agree that Congress intended, or intends, for § 1500 to produce this result. For these reasons, I respectfully concur only in the judgment.

The majority characterizes the Nation’s District Court complaint as seeking “equitable relief,” ante, at 310, but does not mention that the complaint seeks, among other things, equitable monetary relief such as disgorgement and restitution, see App. to Pet. for Cert. 91a.

 In reaching the opposite conclusion, the Court of Appeals relied on the fact that the Nation’s District Court complaint seeks equitable relief whereas its CFC complaint seeks damages. See 559 F. 3d 1284,1288-1289 (CA Fed. 2009). Keene makes clear, however, that actions based on substantially the same operative facts implicate § 1500 so long as they seek overlapping relief. See Keene Corp. v. United States, 508 U. S. 200, 212 (1993). The formal label affixed to the form of relief sought is irrelevant. In this case, both the Nation’s CFC complaint and its District Court com *321 plaint seek money to remedy the Government’s alleged failure to keep accurate accounts.

The majority does not contend that the faets of this case require it to decide this question. It justifies its decision to reach the question on the ground that its rule would eliminate “an unnecessary and complicated remedial inquiry” and would decrease “the expense and duration of litigation.” Ante, at 317. It provides no reason to believe, however, that inquiry into relief requested is unduly complicated in the vast majority of eases. Cf. Loveladies Harbor, Inc. v. United States, 27 F. 3d 1545, 1552 (CA Fed. 1994) (en bane) (“The principles of Casman [v. United States, 135 Ct. Cl. 647 (1956),]... are not that difficult to comprehend or apply”). More *322 importantly, the majority does not explain why the benefits it perceives to result from deciding this question today outweigh the potential for its reading of the statute to leave some plaintiffs with incomplete recompense for their injuries. See infra this page and 323-324.

 Congress has since enacted legislation to permit plaintiffs in Casman’s situation to obtain complete relief in the CFC. See Act of Aug. 29, 1972, §1, 86 Stat. 652, 28 U.S.C. § 1491(a)(2) (permitting the CFC to “issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records”).

 The majority apparently doubts that its holding puts the Nation to a similarly difficult choice. It first suggests that the Nation could file solely in the CFC to obtain damages for the Government’s alleged breaches of fiduciary duty. See ante, at 316. The Nation could indeed choose to file only in the CFC — just as any plaintiff could choose to forgo injunctive relief to pursue money damages in the CFC — but the Nation believes it is entitled to more than monetary relief The Nation’s District Court action seeks an equitable accounting to remedy the same breaches of fiduciary duty, and the CFC has held that it lacks jurisdiction to issue a preliability accounting. See Klamath and Modoc Tribes v. United States, 174 Ct. Cl. 483, 487-488, 490 (1966). But see Eastern Shawnee Tribe of Okla. v. United States, 582 F. 3d 1306, 1308 (CA Fed. 2009) (suggesting in dicta that the CFC can order an equitable accounting as “ancillary relief” under 28 U. S. C. §§ 1491(a)(2) and (b)(2)), cert, pending, No. 09-1521.
The majority next suggests that Congress has tolled the statute of limitations governing the Nation’s CFC claims. See ante, at 316-817. But the cited statute only applies to claims “concerning losses to or mismanagement of trust funds.” 123 Stat. 2922. It does not appear to toll the statute of limitations for claims concerning assets other than funds, such as tangible assets. See App. to Pet. for Cert. 67a-69a (seeking damages for the Government’s mismanagement of the Nation’s mineral estates). Expiration of the 6-year statute of limitations governing claims in the CFC is a very real prospect in this and other eases; the Nation’s District Court action has been pending for more than four years.
As the majority notes, see ante, at 314-315, the validity of the Court of Claims’ holding in Tecon Engineers, Inc. v. United States, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), is not presented in this case. This Court has never considered that holding. Accordingly, I do not consider whether the Nation could have avoided application of § 1500 altogether by filing its CFC action first.

 Congress has consistently used the term “claim” to refer to a demand for money in the context of the CFC. See 28 U. S. C. § 1491(a)(1) (conferring jurisdiction in the CFC over “any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort” (emphasis added)). Of course, since § 1500’s enactment, Congress has authorized the CFC to issue relief other than money damages in certain cases. See § 1491(a)(2).

 Because §1500’s jurisdictional bar applies only when the other suit is pending, “there is a good argument that, even when first enacted, the statute did not actually perform the preclusion function emphasized by its sponsor.” Keene, 508 U. S., at 217.

 Section 1500 refers to the “cause of action alleged in such suit or process” only for the limited purpose of determining whether the other suit or process is against an agent of the United States. When the plaintiff’s other action is against the United States itself, the term “cause of action” has no relevance to the § 1500 inquiry.